COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Senior Judge Annunziata
Argued at Alexandria, Virginia

PUBLISHED

LOUDOUN COUNTY

OPINION BY
v.      Record No. 1533-18-4      JUDGE MARY GRACE O'BRIEN
APRIL 16, 2019
MICHAEL RICHARDSON

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Justin R. Main (Siciliano, Ellis, Dyer & Boccarosse PLC, on briefs),
for appellant.

James E. Swiger (The Law Office of James E. Swiger, PLLC, on
brief), for appellee.

Loudoun County ("employer") appeals a decision of the Workers' Compensation

Commission awarding permanent partial disability benefits to Michael Richardson ("claimant")

pursuant to Code § 65.2-503, based on a 74% impairment rating for loss of use of his left leg.

Claimant was injured on July 10, 2013 during his employment as a fire department battalion chief.

As a result of his injury, he received a total hip replacement on May 7, 2015.

Employer contends the Commission erred by (1) awarding benefits for claimant's loss of leg

use based on an injury to the left hip, a non-ratable body part under Code § 65.2-503; (2) finding

that claimant's functional impairment was the extent of loss prior to the hip replacement; (3) finding

that the 74% impairment rating was credible; and (4) finding that claimant was at maximum

medical improvement on the day immediately preceding the hip replacement.  For the following

reasons, we affirm the award.

BACKGROUND

A. Medical Evidence

Claimant injured his left hip during a work performance evaluation on July 10, 2013. After several months of physical therapy, his physician ordered an MRI and referred him to Dr. Anthony Avery, an orthopedist specializing in hip injuries. Dr. Avery examined claimant on October 18, 2013 and treated him for hip pain. After additional physical therapy, claimant began a more rigorous "work hardening" program in January 2014 to determine if he could resume his pre-injury duties as a firefighter.

After six weeks, claimant "found it difficult to sit or stand for any prolonged period of time" and could perform only light duty work. Claimant returned to Dr. Avery who suggested arthroscopic surgery for his hip. Employer authorized the operation, which Dr. Avery performed on July 15, 2014. During the surgery, Dr. Avery observed "a tremendous amount of labral tearing and cartilage floating around the joint."

Although claimant initially experienced some relief following the arthroscopy, his hip "progressively started to get more painful as time went on." Despite continuing with physical therapy during the fall of 2014, claimant's pain increased. At a post-operative appointment in October 2014, Dr. Avery observed that claimant suffered from severe pain in his hip and groin that "radiat[ed] down his left femur" and limited his range of motion. Dr. Avery noted that claimant qualified for a total hip replacement and determined that his "arthritic condition is from an injury, more so than a chronic degenerative condition." Dr. Avery performed the hip replacement on May 7, 2015. On November 4, 2016, after claimant's recovery, Dr. Avery noted that claimant had an 11% impairment of his leg.

On January 25, 2017, Dr. Avery provided a written evaluation of claimant's "level of impairment prior to his hip replacement surgery." Dr. Avery concluded that claimant had reached

maximum medical improvement three to four months after the July 2014 arthroscopic surgery and "only continued to worsen." He opined that "[w]ithout the hip replacement[,] [claimant] would have continued to be incapacitated. In my opinion to a reasonable degree of medical probability . . . his injury was permanent and would not improve without a total hip replacement." He also explained the following:

> Evaluating his status at that point and using the [American Medical Association ("AMA")] guidelines for impairment, I have calculated an impairment rating for him. He had a notable gait abnormality as well as significantly decreased [range of motion] with flexion, internal rotation, and adduction. Additionally, he had a strength deficit with flexion, extension, and abduction and additionally mild arthritic findings. Therefore, according to the [AMA] guidelines, I feel that he has a permanent partial impairment rating of 30% of his whole body and *74% loss of use of his leg*.

(Emphasis added). Dr. Avery did not examine claimant on January 25, 2017, nor had he specifically performed an impairment assessment on claimant before the hip replacement. At his deposition, Dr. Avery testified that he based his conclusion on his memory and long history of treating claimant.

## B. Procedural History

Claimant filed an action for permanent partial disability benefits based upon a 74% loss of use rating for his left leg. Employer contested the claim on multiple grounds, including that claimant's loss of use rating should account for his improvement following the hip replacement. After a hearing, a deputy commissioner agreed with claimant that "the true measure of [his] functional loss of use is the extent of loss to his left leg prior to his surgically implanted hip replacement," citing Creative Dimensions Group, Inc. v. Hill, 16 Va. App. 439 (1993). However, the deputy commissioner found that claimant sustained a 49% loss of use to his left leg, reducing Dr. Avery's impairment rating due to arthritic changes in the hip. Employer sought review by the

full Commission, and claimant cross-appealed the reduction of his impairment rating from 74% to 49%.

The Commission unanimously affirmed the award but increased the amount based on the 74% impairment rating. It agreed with the deputy commissioner that under Creative Dimensions, functional loss of use is measured by a claimant's impairment before the implantation of a corrective device. The Commission noted that it has consistently applied Creative Dimensions to permanent partial disability claims involving joint replacements. See, e.g., Rowe v. Dycom Indus., Inc., VWC No. 179-38-18 (VA Wrk. Comp. Apr. 24, 2002). It found that Dr. Avery's 74% rating was "credible and reliable" and that the record did not support the deputy commissioner's reduction. The Commission ruled that claimant had reached maximum medical improvement as of May 6, 2015, the day before his hip replacement. The Commission also rejected employer's argument that claimant was not eligible for compensation because the injury was to his left hip, which is not a ratable body part under Code § 65.2-503.

ANALYSIS

A. Standard of Review

On appeal from a decision by the Workers' Compensation Commission, this Court views the evidence in the light most favorable to the prevailing party below. Dunnavant v. Newman Tire Co. Inc., 51 Va. App. 252, 255 (2008). The Commission's factual findings, if supported by credible evidence, are binding on appeal. James v. Capitol Steel Constr. Co., 8 Va. App. 512, 515 (1989). See Code § 65.2-706(A). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." United Airlines, Inc. v. Sabol, 47 Va. App. 495, 501 (2006) (quoting Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75 (2005)). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not

be disturbed by [the] Court on appeal, even though there is evidence in the record to support contrary findings of fact." Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983).

This Court reviews questions of law *de novo*. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127 (1999) (*en banc*).

### B.  Legal Framework for Permanent Partial Disability Benefits

The Workers' Compensation Act ("the Act") provides compensation for permanent partial loss of use of certain body parts, including loss of leg. See Code § 65.2-503(B). "[F]or the permanent partial loss or loss of use of a member, compensation may be proportionately awarded." Code § 65.2-503(D). "[A] numerical rating [of the permanent partial loss of use of the injured body part] is required so that benefits may be proportionally awarded according to the percentage loss and determined by the schedule in Code § 65.2-503(B)." Va. Nat. Gas, Inc. v. Tennessee, 50 Va. App. 270, 279 (2007) (quoting Hill v. Woodford B. Davis Gen. Contractor, 18 Va. App. 652, 654 (1994)).

For the Commission to award benefits pursuant to Code § 65.2-503, "it must appear both that the partial incapacity is permanent and that the injury has reached maximum medical improvement." County of Spotsylvania v. Hart, 218 Va. 565, 568 (1977). A claimant reaches maximum medical improvement when "no reasonable expectation exists that [he] will obtain further functional improvement from medical treatment, even though the injury remains symptomatic and disabling." Gunst Corp. v. Childress, 29 Va. App. 701, 707 (1999).

The Commission's decisions regarding maximum medical improvement and impairment are findings of fact. Montalbano v. Richmond Ford, LLC, 57 Va. App. 235, 250 (2010). "Pursuant to statute, the [C]ommission's factual findings are conclusive and binding on this Court when those findings are based on credible evidence." Id. (citing Code § 65.2-706).

C. Applicability of Code § 65.2-503

Code § 65.2-503 enumerates the body parts eligible for compensation under the Act. Although legs are listed in the statute, hips are not. See Code § 65.2-503(B)(13). Employer contends that because claimant injured his left *hip*, not his left *leg*, he is not eligible to recover benefits.

This Court has interpreted the statute to allow compensation for a work-related injury which "manifests" in a listed body part. Washington Metro. Area Transit Auth. v. Rogers, 17 Va. App. 657, 659 (1994). In Rogers, we affirmed the Commission's award of compensation for a back injury that manifested in the claimant's leg. Id. at 658-59. We reasoned as follows:

> Nowhere does [Code § 65.2-503] specify that any loss of use must result from injury directly to the member itself. Therefore, we read the statute to allow compensation for any work-related injury which manifests itself in a scheduled member.

Id. at 659. This rationale reflects the principle that the Act should be liberally construed in favor of the employee. See id. See also Barnett v. D.L. Bromwell, Inc., 6 Va. App. 30, 33-34 (1988) (*en banc*) ("The Act should be liberally construed in harmony with its humane purpose" of "provid[ing] compensation to an employee for the loss of his opportunity to engage in work.").

Here, the medical evidence supports the Commission's finding that claimant's hip injury manifested in a functional loss of use to his leg. Dr. Avery documented during pre-surgical office visits that claimant suffered from a notable gait abnormality, reduced range of motion, and strength deficits. Although Dr. Avery observed arthritic changes to claimant's hip, in his written evaluation and at his deposition, he repeatedly and specifically confirmed that the loss of use rating was for claimant's leg. For these reasons, the Commission did not err in determining that claimant's injury to his hip that manifested in his leg was compensable pursuant to Code § 65.2-503.

D.  Proper Measurement of Functional Loss of Use to Claimant's Leg

Employer contends that the Commission erred by rating claimant's leg impairment based on his condition before his hip replacement.  It argues that the appropriate measure of loss is claimant's status after the hip replacement because the implanted prosthetic enabled him to achieve "maximum medical improvement."  Accordingly, employer contends that the Commission should have used the post-implant 11% impairment rating, not the pre-implant 74% impairment rating.

Functional loss of use is measured by a claimant's status at the time of the necessary implantation of a "corrective device."  Creative Dimensions, 16 Va. App. at 446.  In Creative Dimensions, the claimant sustained an eye injury that eventually required removal of his eye's natural lens, causing a total loss of vision.  Id. at 440-41.  He was able to recover some vision through an intraocular lens implant, but sought benefits for 100% loss of vision based on his pre-implant status.  Id. at 441.  This Court affirmed the Commission's award compensating the claimant for 100% loss of use based on his uncorrected vision.  Id. at 445-46.  We held that the intraocular lens implant was a "mere corrective device" and therefore "should not be considered in determining the extent of claimant's loss."  Id. at 446.

We provided two reasons for the holding that loss of use is evaluated on the basis of uncorrected vision.  First, we noted that "nothing in the [Act] indicat[es] an intention on the part of the legislature that disability after correction should be the basis for awarding compensation, where there has been an eye injury."  Id. at 443 (quoting Kalhorn v. City of Bellevue, 420 N.W.2d 713, 716 (Neb. 1988)).  "If such had been the legislative intent, the [A]ct would no doubt have been drafted to so provide."  Id. (quoting Kalhorn, 420 N.W.2d at 716).

Second, we focused on the "*actual effect* of the corrective device."  Id. at 444.  Despite improving functionality, the implantation of a corrective device is not without risk.  Id. at 444-45.  We noted that "medical technology may advance to where an intraocular lens implant eliminates the

vision loss without difficulties or future risk." Id. at 445 (quoting Kalhorn, 420 N.W.2d at 717). However, "[a]ny change in the law due to medical advancements should come from the legislature, not from this Court." Id. (quoting Addy Asphalt Co. v. W.C.A.B., 591 A.2d 11, 13 (Pa. 1991)).

Employer argues that because Creative Dimensions was decided in the context of vision loss, it is inapplicable to prosthetic joint implants. We disagree. The underlying rationale of Creative Dimensions indicates that its holding applies regardless of the "corrective device" implanted. As with vision loss, nothing in the Act indicates that loss of use to a leg or other extremity should be measured after the necessary implantation of a mechanical device. See id. at 443. Additionally, although advancements in medical technology may ultimately warrant a different analysis for prosthetic joints, any such change in the law is within the province of the legislature. See id. at 445. Based on this reasoning, we find no error in the Commission's refusal to limit the Creative Dimensions holding to eye injuries.

### E. Whether 74% Leg Impairment Rating was Speculative

Employer contends that because Dr. Avery did not perform a physical assessment and because he based the 74% impairment rating on his recollection of claimant's condition two years earlier, his opinion was speculative and should not have been considered by the Commission. In determining whether credible evidence exists, this Court does not retry the facts, reweigh the evidence, or make its own credibility determinations. Sabol, 47 Va. App. at 501. Dr. Avery, a board-certified orthopedic surgeon, had treated claimant's injury since October 2013. He performed both the initial arthroscopic surgery in July 2014 and the hip replacement in May 2015. Dr. Avery documented the basis for his conclusion in both pre-surgery office visits and post-operative reports. In his deposition, Dr. Avery described in detail how he calculated the rating, attributed it to claimant's work injury, and expressed his opinion to a reasonable degree of medical certainty. See id. (stating that the Commission appropriately "gives great weight to the treating physician's

opinion" in determining permanent partial disability benefits). The Commission did not err in finding Dr. Avery's conclusions credible and accepting his impairment rating.

F. Maximum Medical Improvement

Employer argues that, even assuming Creative Dimensions applies, the Commission erred by finding that claimant reached maximum medical improvement on the day immediately preceding the hip replacement. The Commission's decisions regarding maximum medical improvement are factual findings that are binding on appeal if supported by credible evidence. See Montalbano, 57 Va. App. at 250.

Dr. Avery's impairment evaluation indicates that claimant reached maximum medical improvement three to four months after his arthroscopy in July 2014, in approximately October or November 2014, and "only continued to worsen." The Commission found that claimant was at maximum medical improvement on May 6, 2015, the day before his hip replacement. Employer contends that because claimant's condition declined after October-November 2014, "there is no credible evidence in the record that claimant was at pre-hip replacement [maximum medical improvement] on May 6, 2015." We disagree.

A claimant reaches maximum medical improvement if "no reasonable expectation exists that [he] will obtain further functional improvement from medical treatment, even though the injury remains symptomatic and disabling." Gunst Corp., 29 Va. App. at 707. Here, Dr. Avery's opinion that claimant's condition peaked three to four months after arthroscopic surgery does not preclude a finding that claimant was at maximum medical improvement several months later on May 6, 2015. The record clearly demonstrates that claimant's condition "remain[ed] symptomatic and disabling" and that he was still at maximum medical improvement immediately prior to his hip replacement. Id.

Although claimant initially experienced some relief following the arthroscopy, his hip "progressively started to get more painful as time went on." At the post-operative appointment in October 2014, Dr. Avery observed that claimant suffered from severe hip and groin pain that radiated down his leg and limited his range of motion. Dr. Avery opined that "[w]ithout the hip replacement [claimant] would have continued to be incapacitated. In my opinion to a reasonable degree of medical probability . . . his injury was permanent and would not improve without a total hip replacement." The Commission accepted Dr. Avery's opinion as reasonable and reliable. Along with other evidence in the record, it supports a finding that even if claimant achieved maximum medical improvement three to four months after his initial arthroscopy, his condition would not improve without the hip replacement. Therefore, the Commission did not err by finding that claimant was at maximum medical improvement on May 6, 2015.

CONCLUSION

For the above-stated reasons, we affirm the decision of the Workers' Compensation Commission awarding permanent partial disability benefits to claimant based on the degree of impairment to his left leg prior to the hip replacement.

Affirmed.