COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges O'Brien, Callins and Senior Judge Annunziata

ADRIENNE MALLARD

v.      Record No. 0321-21-4

NEXT DAY TEMPS, INC. AND
  ACCIDENT FUND GENERAL INS. CO.

MEMORANDUM OPINION[*]
PER CURIAM
DECEMBER 7, 2021

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Adrienne Mallard, on brief), *pro se*.

(Amanda Tapscott Belliveau; McCandlish Holton, P.C., on brief),
for appellees.

Adrienne Mallard ("claimant"), *pro se*, appeals a final order of the Workers'

Compensation Commission ("Commission") denying her claims, *inter alia*, that appellees[1] were

required to pay for ongoing treatment with Dr. Phillip Omohundro, had refused to fill her

prescription medications, and had engaged in improper medical management.

Upon reviewing the record and briefs of the parties, we conclude that this appeal is

without merit. Accordingly, we summarily affirm the decision of the Commission. See Rule

5A:27.

BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellees are employer Next Day Temps, Inc. and insurer Accident Fund General Ins.
Co.

favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)). This opinion summarizes only the evidence applicable to the claims before this Court.

On June 6, 2014, claimant suffered injuries after falling down a set of stairs at work. She began treatment with orthopedic surgeon Dr. Omohundro, who initially diagnosed her with a left lateral malleolus fracture and a left ankle sprain, but later noted numerous other injuries including but not limited to bilateral wrist pain, a right ankle sprain, and a left knee contusion. Claimant treated with Dr. Omohundro's office throughout 2014 and 2015. As relevant here, her treatment included medications such as Fosamax, lidocaine patches, and gabapentin.

Beginning in December 2015, claimant filed several claims for medical benefits with the Commission. In July 2016, Deputy Commissioner Dana Plunkett found that claimant suffered compensable injuries to her left leg, left ankle, left foot, left knee, right ankle, and both wrists, specifically a lateral malleolus fracture, left ankle sprain, foot pain, tibial tendinitis, Achilles tendinitis, neuralgia, wrist contusions, and wrist pain resulting from the use of crutches. Deputy Commissioner Plunkett denied claimant's claims for injury to her left hip, right elbow, and for reflex sympathetic dystrophy ("RSD") to the left ankle.

Claimant continued to see Dr. Omohundro throughout 2016 with ongoing pain. Following a January 2016 visit, Dr. Omohundro wrote that claimant "ha[d] a healed left lateral malleolar fracture and persistent pain complaints in . . . both ankles, the left knee, left hip and both hands" and that "[a]ll . . . studies ha[d] been normal except for the left ankle." In May 2016, Dr. Omohundro noted "no structural damage" to claimant's foot or ankle and wrote that claimant "ha[d] many complaints for which no specific pathology [was] identified." He suspected that "nerve sensitivity" was causing claimant's ongoing pain. In December 2016, Dr. Omohundro wrote that claimant had bilateral wrist pain, bilateral knee pain, ankle pain, left

foot and ankle nerve pain, and depression, and opined that all of these ailments were causally related to the June 2014 injury.

In October 2016, claimant filed another claim for benefits, asserting chronic regional pain syndrome ("CRPS") in her left ankle, left foot, left hip, left knee, and both wrists, neuralgia in her right ankle, and a left leg fracture. Later that month, Dr. Omohundro referred claimant to pain management specialist Dr. Levi Pearson to treat claimant's neuralgia and neuritis. Appellees deposed Dr. Omohundro in February 2017. He testified that claimant's left ankle fracture had completely healed, that there was likely some neurological basis for claimant's ongoing complaints, and that, although there were no objective findings to substantiate claimant's complaints, her complaints were consistent. Dr. John Daken conducted an independent medical examination ("IME") with claimant in March 2017 and completed a psychiatric evaluation report. Claimant sent Deputy Commissioner William Kennard a letter in April 2017 outlining various complaints with Dr. Daken's report.

In June 2017, Deputy Commissioner Kennard awarded claimant medical benefits for left leg osteopenia, left plantar fasciitis, left metatarsalgia, left tarsal tunnel syndrome, left equinus gastrocnemius, left ankle contracture, sural nerve damage, and neuralgia. He denied claimant medical benefits for a left hip injury, arthritis/degenerative joint disease, left knee chondromalacia patella, left knee retinacular, radiculopathy, left shin splint, right knee injury, major depressive disorder, and CRPS/RSD in the left foot and left leg. The full Commission affirmed Deputy Commissioner Kennard's ruling in December 2017. This Court affirmed the Commission's ruling on appeal. See Mallard v. Next Day Temps Inc., No. 0028-18-4 (Va. Ct. App. May 14, 2019).

In December 2017, Dr. Omohundro completed a questionnaire at appellees' request, opining that physical therapy should help claimant's ankle improve and "may help [her] nerve

pain." He agreed with appellees that gabapentin and lidocaine patches had not improved claimant's condition and recommended that her gabapentin dose be increased. Later that month, appellees authorized claimant's treatment with Dr. Pearson, as well as physical therapy, a TENs unit, and all medications claimant requested except for an antidepressant. Appellees also notified claimant that she was authorized for a podiatry/orthotics referral. In January 2018, Deputy Commissioner Susan Cummins denied claimant's request for an antidepressant but authorized, pursuant to stipulation, pain management, physical therapy, a podiatrist, orthotics, Fosamax, lidocaine patches, and gabapentin.

Dr. Omohundro next met with claimant in April 2018, writing that there was "[n]o active orthopedic treatment at this time." He prescribed Pennsaid—a diclofenac topical gel used to treat knee pain—and noted that he had referred claimant to Dr. Pearson for pain management. He did not schedule a follow-up appointment with claimant.

Claimant met with Dr. Pearson for the first and only time in June 2018. Claimant told Dr. Pearson that her pain had not responded to medication, including gabapentin and lidocaine patches. Dr. Pearson devised a treatment plan consisting of lumbar blocks to be followed potentially by spinal cord stimulation. In October 2018, Dr. Pearson completed a questionnaire at appellees' request, stating that he had examined claimant and had recommended several treatment options, but that she had not followed up with his office for further treatment. He averred that he had not refused to see or treat claimant. He further opined that claimant's complaints of bilateral wrist pain were not related to the wrist contusions she suffered from the 2014 work accident. Claimant asserted later that month that she attempted to follow up with Dr. Pearson but that appellees refused to return Dr. Pearson's telephone calls or authorize the recommended treatment plan. She also wrote that Dr. Pearson's questionnaire made her feel unsafe with him.

Dr. Omohundro met with claimant on August 14, 2018, again writing that claimant was "[n]ot in need of active orthopedic care" and that he "recommended [claimant] to continue under care of pain [management] with Dr. Levi Pearson." He refilled claimant's prescriptions for Pennsaid, lidocaine patches, and gabapentin but did not schedule a follow-up appointment. On August 22, 2018, Dr. Omohundro completed another questionnaire for appellees, indicating that he saw claimant most recently on August 14, 2018, that he "no longer need[ed] to see [claimant] for her work-related injuries," and that he deferred to Dr. Pearson for claimant's "ongoing care for the work accident."

In October 2018, appellees moved to compel claimant to attend an IME with Dr. Louis Levitt, which Deputy Commissioner Susan Cummins granted. Claimant wrote a letter to Deputy Commissioner Cummins stating that claimant's male primary care physician had recently sexually assaulted claimant and that claimant was not ready to treat with "a male doctor[] other than the ones [she] ha[d] been going to and trust[ed]." Deputy Commissioner Cummins acknowledged claimant's letter but again ordered that claimant attend the IME and stated that the Commission would not consider her case until she did so. Claimant attended the IME in November 2018 but later wrote to the Commission about the distress the IME caused.

In February 2019, claimant met with Dr. Omohundro to discuss possible treatments for claimant's left wrist pain, which Dr. Omohundro diagnosed as wrist tenosynovitis. Dr. Omohundro also renewed claimant's Pennsaid prescription. The notes for that encounter reflect that claimant had last been prescribed Fosamax in June 2018, gabapentin in October 2018, and lidocaine patches and Pennsaid (2% strength) in February 2019. Claimant received diclofenac topical solution (1.5% strength) in March 2019.

In July 2019, insurer advised Dr. Omohundro that it would not authorize any further treatment with claimant. In September 2019, appellees' counsel emailed claimant a panel of

approved podiatrists and reiterated that appellees had authorized claimant to be fitted for orthotics. In October 2019, appellees' counsel advised claimant that appellees would not authorize further treatment with Dr. Omohundro because Dr. Omohundro had transferred her care to Dr. Pearson. Counsel wrote that "treatment for conditions that [were] related to [claimant's] work accident [would] be authorized" but that appellees would "not be responsible for any treatment of conditions that ha[d] been denied by the Commission/Court of Appeals." Counsel again reiterated that appellees had authorized orthotics and treatment with a podiatrist.

On November 27, 2019, claimant filed the instant claim for benefits alleging that appellees had stopped authorizing treatment with Dr. Omohundro, had blocked access to claimant's prescription medications since February 2019, and had engaged in improper medical management of her claims. She claimed that she had scheduled an appointment with Dr. Omohundro on October 29, 2019, but that Dr. Omohundro's office told her when she arrived that the appointment was canceled. She further claimed that she had not received a response to her April 2017 letter to Deputy Commissioner Kennard regarding her IME with Dr. Daken.

In July 2020, appellees approved gabapentin, Fosamax, and lidocaine patches. The parties held a hearing before Deputy Commissioner John Nevin later that month. Deputy Commissioner Nevin began the hearing by summarizing the claims. Claimant responded "[c]orrect" to this summary. Claimant testified that she last saw Dr. Omohundro on October 29, 2019, and that she had only seen Dr. Pearson once because appellees prevented her from returning to him. She testified that she was not receiving any of her prescriptions and specifically listed Fosamax, Pennsaid, and gabapentin. She testified that she had received a lower strength dose of Pennsaid that caused her wrist pain when applying it to her knee. She clarified that her mismanagement claim was based on appellees' alleged denial of medications and treatment with Dr. Omohundro and their "consistent[] . . . contempt" of Commission

opinions. She again attempted to raise her complaints regarding Dr. Draken, but Deputy Commissioner Nevin explained that that issue was not before the Commission. Regarding claimant's medications, appellees asserted that the only prescription requests received by the carrier after March 2019 were for Pennsaid—which appellees argued was prescribed for claimant's asserted knee injuries for which the Commission denied benefits in 2017—and that claimant had not submitted any prescription request to the carrier since May 22, 2019.

In August 2020, Deputy Commissioner Nevin found that appellees were not required to authorize further treatment with Dr. Omohundro based on Dr. Omohundro's stated opinion that no further orthopedic treatment was necessary and his referral to Dr. Pearson for further treatment. Deputy Commissioner Nevin also found that claimant failed to support her claim that appellees had blocked access to prescription medications, stating that he "suspect[ed] that, to the extent the claimant may have experienced difficulty refilling prescriptions, such difficulty may [have] be[en] related to the fact she ha[d] not seen Dr. Omohundro for over a year and ha[d] not seen Dr. Pearson for over two years." Finally, Deputy Commissioner Nevin found that appellees had not engaged in improper medical management and that it was "not improper" for appellees to submit questionnaires to claimant's physicians.

Claimant appealed to the full Commission. In addition to the claims addressed by Deputy Commissioner Nevin, she again complained about Dr. Daken's 2017 IME and asserted that the Commission had violated her due process rights by, among other actions, canceling her March 2020 hearing due to COVID-19 and rescheduling it to July 2020. She also filed a written statement on review asserting, as relevant here, that appellees and the Commission had retaliated against her due to her previous appeal to this Court. In March 2021, the Commission affirmed Deputy Commissioner Nevin's opinion, agreeing substantially with Deputy Commissioner

Nevin's factual findings and conclusions and finding claimant's additional arguments without merit.

ANALYSIS

"On appeal from a decision by the Workers' Compensation Commission, this Court views the evidence in the light most favorable to the prevailing party below." Loudoun Cnty. v. Richardson, 70 Va. App. 169, 175 (2019). "The Commission's factual findings, if supported by credible evidence, are binding on appeal." Id. See Code § 65.2-706(A). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses." United Airlines, Inc. v. Sabol, 47 Va. App. 495, 501 (2006) (quoting Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574-75 (2005)). "If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by [the] Court on appeal, even though there is evidence in the record to support contrary findings of fact." Richardson, 70 Va. App. at 176 (quoting Caskey v. Dan River Mills, Inc., 225 Va. 405, 411 (1983)). "Such deference to the Commission does not extend to questions of law, which we review *de novo*." Anderson, 65 Va. App. at 361.

I.

Claimant's first assignment of error[2] is that the Commission has not enforced its prior opinions awarding her medical benefits, in violation of Code § 65.2-201 and the Fourteenth Amendment. Code § 65.2-201 sets forth the Commission's general duties and powers. As relevant here, it provides that the Commission "shall have the power . . . to enforce compliance with its lawful orders and awards." Code § 65.2-201(A). Nothing in this section obligates the

_____

[2] Claimant did not number her assignments of error. For the purposes of this opinion, we treat her underlined headings as separate assignments.

Commission to take any specific actions to enforce compliance, nor does claimant provide legal authority for her claim that the Commission is constitutionally obligated to take specific enforcement measures. Construing claimant's assignment of error more liberally, cf. Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (holding that *pro se* complaints are held "to less stringent standards than formal pleadings drafted by lawyers"), we discern the following alleged errors: (1) the Commission erred by finding that appellees were not responsible for ongoing treatment with Dr. Omohundro; (2) the Commission erred by finding that appellees had not blocked claimant's prescription medications; (3) the Commission erred by finding that appellees had not engaged in improper medical management; and (4) the Commission manipulated the hearing issues.

Claimant bears the burden of showing that the medical treatment for which she seeks payment is causally related to a compensable injury, necessary, and recommended by her treating physician. Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 199 (1985). Whether an expense is medically necessary and reasonable is a question of fact. ARA Servs. v. Swift, 22 Va. App. 202, 208 (1996). Claimant challenges the Commission's determination that appellees were not responsible for her continued treatment with Dr. Omohundro. Dr. Omohundro opined as early as May 2016 that claimant had no structural damage to her musculoskeletal system—the type of damage that would normally fall within the purview of an orthopedic surgeon—and that nerve damage was likely causing claimant's ongoing pain. He reiterated this opinion at his February 2017 deposition. Consistent with this opinion, he referred claimant to Dr. Pearson to treat claimant's neuralgia and neuritis. Moreover, Dr. Omohundro opined in both his treatment notes and in the appellees' questionnaire that claimant required no further orthopedic treatment and should instead treat with Dr. Pearson for her work-related injuries. Accordingly, credible

- 9 -

evidence supports the Commission's conclusion that appellees were not responsible for further treatment with Dr. Omohundro.

In response, claimant asserts that appellees manipulated Dr. Omohundro through questionnaires and insurer's July 2019 letter informing Dr. Omohundro that insurer would not authorize further treatment with claimant. There is no indication that such efforts by appellees to obtain information about claimant's care influenced Dr. Omohundro's opinions, particularly because Dr. Omohundro indicated in his treatment notes from before the questionnaires that claimant required no further orthopedic treatment.

Claimant also points to her February 2019 visit with Dr. Omohundro in which they discussed potential treatment options for claimant's left wrist pain. The Commission previously awarded claimant benefits for bilateral wrist contusions and wrist pain arising from the use of crutches. By contrast, Dr. Omohundro's February 2019 treatment notes discuss wrist tenosynovitis. Dr. Pearson opined in his questionnaire that claimant's complaints of bilateral wrist pain were not related to the 2014 accident. Accordingly, the February 2019 treatment notes do not undermine the conclusion that credible evidence supports the Commissions' factual findings.

Claimant asserts that appellees prevented her from returning to Dr. Pearson as well, stating that appellees ignored emails and calls from claimant and Dr. Pearson's office for two years following Dr. Omohundro's referral. Even if this were true, it does not explain why claimant failed to return to Dr. Pearson after her June 2018 visit. Dr. Pearson stated in his questionnaire that claimant never followed up with his office after the initial visit and that he never refused to see or treat claimant. Additionally, appellees specifically informed claimant that they authorized her continued treatment with Dr. Pearson. Accordingly, notwithstanding

claimant's assertions, credible evidence supports the Commission's finding that appellees never blocked claimant from treating with Dr. Pearson.

Claimant next asserts that appellees denied her access to her prescription medications beginning in February 2019. Although claimant testified at the hearing that she was not receiving her prescription medications, she did not present any evidence showing that appellees were the cause of her difficulties in obtaining medication. In fact, claimant did not present any evidence showing that she had been prescribed any medication after February 2019. The medical records reflect a June 2018 prescription for Fosamax, an October 2018 prescription for gabapentin, and February 2019 prescriptions for lidocaine patches and Pennsaid. Appellees authorized gabapentin, Fosamax, and lidocaine patches in July 2020, though there is no indication as to when claimant presented such prescriptions to appellees. There is no other evidence in the record regarding claimant's prescriptions. Accordingly, claimant failed to carry her burden to prove that appellees had blocked access to necessary medical treatment.

Claimant asserts that appellees engaged in improper medical management. "[M]edical management of the claimant is to be directed by the treating physician, not by an employer's representative." Jensen Press v. Ale, 1 Va. App. 153, 158 (1985). Neither the employer nor its insurance carrier may limit the treating physician's recommendations or referrals. Id. Credible evidence supports the Commission's finding that appellees did not limit the treating physician's recommendations or referrals. Although claimant asserts that appellees manipulated Dr. Omohundro, Dr. Omohundro consistently opined that he had no further orthopedic treatment to offer for claimant's work-related injuries. In other words, claimant did not demonstrate that appellees limited any of the treating physician's recommendations. It was also proper for appellees to furnish questionnaires on claimant's treating physicians. See Code § 65.2-607 (establishing the right of employers to obtain medical information from employee's doctors in

- 11 -

connection with workers' compensation proceedings).  Accordingly, claimant failed to demonstrate a case of medical mismanagement.

Finally, claimant asserts that the Commission manipulated the case in various ways.  For example, she claims that Deputy Commissioner Nevin incorrectly summarized her claims at the July 2020 hearing.  Claimant did not preserve this issue below.  "No ruling of the . . . Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice."  Rule 5A:18.  The Court will not consider on appeal a question not properly presented to the Commission unless "the record affirmatively shows that a miscarriage of justice has occurred."  Mounce v. Commonwealth, 4 Va. App. 433, 436 (1987).  Claimant did not raise this issue below, and in fact affirmatively assented to Deputy Commissioner Nevin's summary of her claims.  She does not invoke the good cause or ends of justice exceptions to Rule 5A:18, and the Court will not apply the exceptions *sua sponte*.  Edwards v. Commonwealth, 41 Va. App. 752, 761 (2003) (*en banc*).  Thus, Rule 5A:18 bars our consideration of this claim.

II.

In her second assignment of error, claimant asserts that both the Commission and appellees retaliated against her because she previously appealed the Commission's December 2017 decision.  She further asserts that appellees and the Commission discriminated against her on the basis of her race, sex, and *pro se* status and that the Commission violated her Eighth Amendment right to be free from torture.  Claimant did not assert her discrimination or Eighth Amendment claims below and does not invoke the good cause or ends of justice exceptions.  Accordingly, she has waived considerations of these claims.  See Rule 5A:18.

Claimant did assert below that the Commission and appellees retaliated against her based on her previous appeal to this Court. It is unclear which statute or constitutional provision provides the legal authority for claimant's retaliation claim. The Virginia Workers' Compensation Act, for example, prohibits employers from discharging employees in retaliation for those employees filing workers' compensation claims, but the statute is otherwise silent on retaliation. Code § 65.2-308(A). Claimant has not provided any legal authority giving rise to her retaliation claim. In any event, for the following reasons, we find that claimant presented no evidence of retaliation.

The bulk of claimant's retaliation claim appears to be based on the issues already discussed, that is, that appellees retaliated against her by blocking her medications and treatment with Dr. Omohundro. We agree with the Commission's conclusion that it is not illegal retaliation to raise successful defenses to compensation claims. Claimant also asserts that appellees' October 2018 motion to compel her to attend an IME with Dr. Levitt and Deputy Commissioner Cummins' orders granting that motion constitute illegal retaliation. Claimant raised retaliation for the first time at the July 2020 hearing before Deputy Commissioner Nevin but did not elaborate on the basis for her claim. In her filings on review of Deputy Commissioner Nevin's opinion, she referenced allegedly retaliatory treatment, but never specifically asserted that the 2018 IME was in retaliation for her prior appeal. We find that claimant failed to specifically raise this issue below and accordingly has waived appellate consideration. Finally, under her retaliation heading, claimant complains that Deputy Commissioner Kennard did not respond to her April 2017 letter regarding her IME with Dr. Daken. As Deputy Commission Nevin correctly noted at the hearing, claimant's November 17, 2019 claim for benefits did not contain any claims pertaining to that IME. Moreover, Deputy Commissioner Kennard's allegedly unresponsive opinion preceded claimant's first appeal;

- 13 -

indeed, the Commission's affirmance of that opinion was the ruling previously appealed. Therefore, whatever complaints claimant might have with the Dr. Daken IME or the Commission's responsiveness to those prior complaints, they cannot serve as the basis for a retaliation claim. Accordingly, we affirm the Commission's denial of claimant's retaliation claims.

## III.

Third, claimant asserts that opposing counsel acted abusively by sending manipulatory questionnaires and fallacious letters to claimant and her doctors. This assignment of error is not directed at any mistakes made by the Commission. Moreover, this assignment of error does not comply with Rule 5A:20(e) because it lacks supporting legal authority. "Unsupported assertions of error 'do not merit appellate consideration.'" Mitchell v. Commonwealth, 60 Va. App. 349, 352 (2012) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734 (2008)); see also Bartley v. Commonwealth, 67 Va. App. 740, 745 (2017) (describing appellant's argument as consisting "solely of conclusory statements unsupported by any legal analysis or authority"). Accordingly, we decline to consider this assignment of error.

## IV.

Claimant's fourth assignment of error reiterates that appellees improperly managed her case. This assignment of error is unavailing for the reasons already stated.

## V.

In her fifth assignment of error, claimant asserts that the Commission breached its contract with her. Claimant did not assert breach of contract below and has accordingly waived this issue. See Rule 5A:18. Regardless, contrary to claimant's assertions, neither the Commission's statutory duties nor its earlier opinions establish a contract between claimant and the Commission.

## VI.

Sixth, claimant asserts generally that the Commission has acted abusively toward her. As with claimant's third assignment, this assignment is an unsupported assertion of error with no supporting legal authority and does not comply with Rule 5A:20(e). We thus decline to consider it.

## VII.

Finally, claimant's amended opening brief contains a number of arguments that are not contained within her assignments of error, such as that the Commission and appellees engaged in an illegal conspiracy, in violation of 18 U.S.C. § 241, or deprived her rights under color of law, in violation of 18 U.S.C. § 242. We will not address arguments that were not part of the assignments of error that were designated for appeal. See Rule 5A:20(c) and (e); Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4 (2001) (declining to consider an issue on appeal because it was not "expressly stated" in the questions presented (now assignments of error)).

For the foregoing reasons, we summarily affirm the Commission's rulings. Rule 5A:27.

Affirmed.