COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, O'Brien and Fulton

FRANCES HALPERN

                                               MEMORANDUM OPINION[*] BY
v.       Record No. 0477-24-4            JUDGE MARY GRACE O'BRIEN
                                                DECEMBER 30, 2024

PRINCE WILLIAM COUNTY, ET AL.

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Joseph F. Curran; C. Michelle Buelow; Parthemos, Curran, Buelow
& Polizzi, PLLC, on brief), for appellant. Appellant submitting on
brief.

(Michelle R. Robl, County Attorney; Jeffrey R.B. Notz, Deputy
County Attorney, on brief), for appellees. Appellees submitting on
brief.

Frances Halpern challenges the Virginia Workers' Compensation Commission's denial of her claim for permanent partial disability benefits. Halpern argues that the Commission erred in holding that she failed to prove that her work accident caused the permanent partial disability and in finding her treating physician's opinion persuasive. For the following reasons, we affirm.

BACKGROUND

"On appeal from a decision of the [Virginia Workers' Compensation] Commission, 'the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the prevailing party below.'" *Jalloh v. S.W. Rodgers*, 77 Va. App. 195, 200 n.2 (2023) (quoting *City of Charlottesville v. Sclafani*, 70 Va. App. 613, 616 (2019)). Here, the employer prevailed below.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

On June 2, 2020, Halpern tripped on uneven pavement and landed directly on her right kneecap. Dr. Christopher Highfill examined Halpern on June 10 and diagnosed Halpern with contusions of the knee and elbow. But he noted that x-rays showed "moderate osteoarthritis with degenerative changes in . . . the right knee." On June 17, Halpern filed a claim for benefits with the Commission, seeking a lifetime medical award for permanent partial disability. It was undisputed that the injury was work-related, and the employer "accepted a right knee contusion and strain as her compensable injuries." The parties agreed to an award of medical benefits in November 2021.

From 2020 to 2023, Dr. Highfill saw Halpern 17 times and consistently noted that the patient showed symptoms of osteoarthritis with degenerative changes. Dr. Highfill injected steroid into Halpern's kneecap, suggested anti-inflammatory medications, and provided a handicapped parking permit.

In April 2022, Halpern asked Dr. John Bruno to review her workers' compensation claim. After examining her, Dr. Bruno concluded that Halpern suffered a work-related injury that caused a 23% permanent physical impairment in the right leg. Dr. Bruno reported that Halpern had not had any prior problems or treatments for her right knee. But Dr. Highfill had performed an arthroscopic repair on Halpern's right meniscus in 2010. Dr. Highfill's medical notes indicate that Halpern already had degenerative changes and osteoarthritis at the knee back then. Halpern testified that she had not participated in any physical therapy after the surgery and reported that she had no limitations or pain. In June 2023, Dr. Bruno amended his report to include the prior surgery but still concluded that it was "clearly obvious" that Halpern's work-related injury aggravated her pre-existing arthritic condition.

In May 2022, Halpern elected to undergo a total knee arthroplasty. She continued seeing Dr. Highfill for follow-up instructions and care. In August 2022, Dr. Highfill noted that he "did

not feel comfortable signing or approving" Dr. Bruno's report because her arthritis had been pre-existing. He reasoned that Halpern "had significant arthritic disease before any injury to her knee, and [he did] not find a medical reason to link her arthritis with any injury at work." In January 2023, Dr. Highfill reported that 0% of Halpern's impairment was attributable to her work accident because "there was no evidence of a severe interarticular injury that would lead to an exacerbation and acceleration of her underlying knee arthritis."

At the hearing before the deputy commissioner, Halpern testified to her injuries, and both sides submitted her medical records from Dr. Highfill and Dr. Bruno. The deputy commissioner awarded Halpern permanent partial disability benefits, reasoning that despite being Halpern's treating physician, Dr. Highfill's opinion was "shaded by doubt and therefore undeserving of great probative weight." Instead, the deputy commissioner adopted Dr. Bruno's opinion that the work accident had aggravated Halpern's pre-existing knee condition and arthritic changes.

On review, the Commission reversed in a split decision. The majority concluded that Halpern did not establish by a preponderance of the evidence that the work injury had caused a 23% impairment. Reversing the award of permanent partial disability, the Commission found no "convincing reason to rely upon the independent examiner and reject the opinion of the treating doctor." The dissenting Commissioner concluded that Dr. Highfill's opinion should not have been considered because it "either stem[med] from a lack of understanding regarding the legal impact of the aggravation of a pre-existing condition from an injury, or his lapse into the role of an advocate."

Halpern argues that the Commission erred in finding that she failed to meet her burden to prove that her accident caused permanent partial disability. Halpern relies on her testimony and previous medical records to show that the knee injury exacerbated her arthritic condition. She also argues that "Dr. Bruno's addendum . . . provides analysis and reasoning to support his

conclusion that [her] arthritic condition was aggravated by the work accident." Finally, Halpern argues that the Commission erred in crediting Dr. Highfill's opinion over Dr. Bruno's. She contends that Dr. Highfill's opinion does "not appear credible or reasonable based on the facts presented to him and the history of his treatment."

ANALYSIS

"As the appellant in this case, the claimant bears the 'burden of showing' that the Commission committed 'reversible error.'" *Jones v. Crothall Laundry*, 69 Va. App. 767, 774 (2019). "The Commission's factual findings, if supported by credible evidence, are binding on appeal." *Loudoun Cnty. v. Richardson*, 70 Va. App. 169, 175 (2019). "This principle applies 'even [if] there is evidence in the record to support a contrary finding.'" *Jones*, 69 Va. App. at 774 (alteration in original) (quoting *City of Waynesboro v. Griffin*, 51 Va. App. 308, 317 (2008)). "By statute, determinations of the Commission 'shall be conclusive and binding as to all questions of fact.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting Code § 65.2-706(A)).

"The opinion of the treating physician is entitled to great weight, although the commission is not required to accept it." *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011). "A question raised by conflicting medical opinion is a question of fact." *Newport News Shipbuilding & Dry Dock Co. v. Barnes*, 32 Va. App. 66, 69 (2000) (quoting *Commonwealth Dep't of Corr. v. Powell*, 2 Va. App. 712, 714 (1986)). "[W]e do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses." *Jeffreys*, 297 Va. at 87 (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)).

Viewing the evidence in the light most favorable to the employer, who was the prevailing party before the Commission, the record supports the finding that Halpern did not prove that her

work-related accident caused impairment to her right knee. Dr. Highfill had treated Halpern for more than a decade. As the treating physician, his opinion was "entitled to great weight." *United Airlines, Inc.*, 58 Va. App. at 238. The record includes several clinical notes from Dr. Highfill, each documenting osteoarthritis at Halpern's right knee. Dr. Highfill noted the arthritis well before the work-related injury.

In contrast, Dr. Bruno saw Halpern only once and based his original opinion on an incomplete medical history. Although he amended his report to account for the prior surgery, the Commission was not required to accept his opinion. Despite Halpern's claim that Dr. Bruno provided a "much more thorough" examination of her knee than Dr. Highfill, we note that she continued to seek treatment from Dr. Highfill even after receiving Dr. Bruno's opinion. The doctors' conflicting medical opinions presented a question of fact for the Commission to resolve. Credible evidence supports the Commission's decision, so we are bound by it. *Richardson*, 70 Va. App. at 175.

## CONCLUSION

For the above reasons, we affirm the Commission's decision.

*Affirmed.*