COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Fitzpatrick, Judges Elder and Felton
Argued at Alexandria, Virginia


UNITED AIRLINES, INC.
                                                          OPINION BY
v.        Record No. 1292-05-4            JUDGE WALTER S. FELTON, JR.
                                                          JANUARY 24, 2006
MICHAEL A. SABOL


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Michael N. Salveson (Hunton & Williams, LLP, on brief), for
          appellant.

          Kathleen G. Walsh (Law Office of Kathleen G. Walsh, on brief), for
          appellee.


        Appellant United Airlines, Inc. (employer) appeals a decision of the Virginia Workers'

Compensation Commission (commission) awarding Michael A. Sabol (claimant) nine percent

(9%) permanent partial disability (PPD) of his left lower extremity.  Employer contends the

commission erred in finding that claimant proved a compensable permanent partial disability to

his left lower extremity, arguing that the record does not reflect he suffered any functional loss of

use of that extremity as a result of his work-related accident.  Employer further argues that the

commission erred in finding that claimant proved a nine percent permanent partial disability

resulting from his June 2003 accident because his treating physician was unable to apportion that

rating between compensable and non-compensable causes.  For the reasons that follow, we

affirm.

                                    BACKGROUND

        On employer's appeal from the decision of the commission, we view the evidence below

in the light most favorable to the claimant, the prevailing party there.  Tomes v. James City

(County of) Fire, 39 Va. App. 424, 429, 573 S.E.2d 312, 315 (2002). So viewed, the evidence shows that in June 2003 claimant suffered a compensable work-related injury to his left knee while pushing a heavy container onto a cargo loader at Dulles Airport. Dr. Michael Kavanagh, an orthopedic surgeon, treated claimant following his injury.

In his initial report, Dr. Kavanagh noted that claimant had previously sustained a left knee medial meniscus tear in 1996 that was treated conservatively with physical therapy.[1] He examined claimant for the June 2003 injury, ordered an MRI[2] of the knee, and on review of the MRI, diagnosed an ACL tear, meniscal tear, and osteoarthritis in claimant's left knee. Because claimant "ha[d] episodes of instability" in his left knee, Dr. Kavanagh prescribed a left knee brace, ordered physical therapy, and authorized only light duty work.

Dr. Kavanagh noted that physical therapy had benefited claimant but that claimant "still [felt] a little unstable and still ha[d] some pain" in his left knee. In October 2004, claimant underwent arthroscopic surgery to his left knee, with partial medial and lateral meniscectomy. Following surgery, claimant attended physical therapy sessions with gradual improvement. Dr. Kavanagh noted that claimant's "strength [was] coming back slowly" and released claimant for light duty work, and continued his physical therapy regimen. Claimant complained of some "achiness in his [left] knee" but requested to go back to work full-time. Following an April 2004 examination, Dr. Kavanagh noted that while claimant occasionally incurred knee pain, he did not have any difficulty with daily activities and was doing full duty at work.

---

[1] Dr. Kavanagh was also claimant's treating physician for the 1996 injury.

[2] Magnetic resonance imaging (MRI) is a method of visualizing soft tissues of the body by applying an external magnetic field that makes it possible to distinguish between hydrogen atoms in different environments. See Dorland's Illustrated Medical Dictionary 877 (29th ed. 2000).

In July 2004, employer's claims representative wrote to Dr. Kavanagh, requesting his assessment of claimant's maximum medical improvement and permanent partial disability. Dr. Kavanagh returned a handwritten notation on a form sent by the claims representative that claimant had "reached MMI 0% PPD." In an August 2004 follow-up letter to claimant's counsel, however, Dr. Kavanagh stated that, in his opinion, claimant had reached maximum medical improvement and that "his left lower extremity has a PPD rating of 9% and 4% [sic] wholeperson." In November 2004, responding to an additional written questionnaire from the claims representative, Dr. Kavanagh opined that claimant's June 2003 injury exacerbated his 1996 injury to the left knee. He also stated that, in his opinion, claimant suffered a nine percent permanent partial disability rating of his left leg based on the *AMA Guidelines to the Evaluation of Permanent Impairment, Fifth Edition*.[3] In response to employer's inquiry as to what portion of that disability rating was attributable to claimant's 1996 knee injury, or to other factors, Dr. Kavanaugh wrote, "refer to answer 2."[4] Responding to a follow-up letter from claimant's counsel, Dr. Kavanagh indicated that claimant's nine percent permanent partial disability resulted solely from his June 2003 work-related injury.

Following a hearing, a deputy commissioner awarded claimant nine percent permanent partial disability to his left lower extremity. He found that, although claimant had a preexisting knee condition, employer was responsible for the work-related exacerbation of that preexisting condition.

---

[3] As noted by the commission, the *AMA Guidelines* set forth various ways to determine functional impairment, including actual measurements of loss of range of motion, and consideration of actual anatomical loss.

[4] Question 2 asked which diagnoses were attributable to claimant's 1996 knee injury, to his 2003 injury, or to other factors. Dr. Kavanagh responded that claimant's 1996 injury resulted in a "medial meniscal tear [and] chondromalacia of the medial joint line," that his 2003 injury resulted in "further damage to [the] med[ial] meniscus[,] lateral meniscal tear [and] chondromalacia," and that "some of the degenerative change" was due to other factors.

The deputy commissioner also noted that "[t]he *AMA Guidelines* set forth various ways to determine functional impairment, including actual measurements of loss of range of motion, and consideration of actual anatomical loss." The deputy commissioner noted that the *AMA Guidelines* consider anatomical loss of parts of the knee ligaments in arriving at a disability rating and provide for a ten percent (10%) permanent partial disability rating for a partial medial and lateral meniscectomy. He noted that both claimant and Dr. Kavanagh reported that claimant was "able to fully function in his daily and work activities." He stated, however, that "[t]he mere fact that the claimant is still able to fully perform these activities, although a fact to be considered in determining functional loss, does not necessarily negate the possibility of functional loss." He concluded that "claimant's ability to fully perform his home and work activities does not, by itself, render the 9% impairment rating incredible."

The full commission found on review that "although Dr. Kavanagh's assessment of a 9% impairment was not accompanied by a detailed explanation, his [medical] opinion is uncontradicted" and was based on the *AMA Guidelines.* The commission further determined that claimant's ability to perform his daily and work activities did not refute Dr. Kavanagh's medical opinion that claimant suffered a nine percent permanent partial disability impairment. Accordingly, it affirmed the deputy commissioner's decision.

ANALYSIS

"Under well recognized principles governing the standard of review on appeal, we must affirm the commission's judgment awarding [permanent partial disability] if those findings are supported by credible evidence in the record, regardless of whether contrary evidence exists or contrary inferences may be drawn." Rusty's Welding Service, Inc. v. Gibson, 29 Va. App. 119, 131, 510 S.E.2d 255, 261 (1999) (citing Code § 65.2-706(A); Stenrich Group v. Jemmott, 251

Va. 186, 192, 467 S.E.2d 795, 798 (1996); Roanoke Belt, Inc. v. Mroczkowski, 20 Va. App. 60, 68, 455 S.E.2d 267, 271 (1995)).

"'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses.'" Pruden v. Plasser American Corp., 45 Va. App. 566, 574-75, 612 S.E.2d 738, 742 (2005) (citing Wagner Enterprises, Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

I.

Employer contends that the commission erred in finding that claimant proved a compensable permanent partial disability. It argues that because the record shows that claimant demonstrated no functional loss of use of his left leg, it was error to award claimant a nine percent permanent partial disability. Employer further asserts that claimant's return to full work duty, the absence of any limitation of his daily work or life activities, and the failure of his pain to inhibit function of his lower extremity preclude his compensation for permanent partial disability. Employer, however, has provided no medical evidence to contradict Dr. Kavanagh's medical opinion as to claimant's permanent partial disability rating.

The commission, in determining permanent partial disability benefits, must rate claimant's percentage of incapacity based on the evidence presented to it. See Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 401 S.E.2d 213 (1991). In doing so, it gives great weight to the treating physician's opinion. Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 439, 339 S.E.2d 570, 572 (1986). See also Boston v. Prince William Answering Service, 58 O.I.C. 9 (1978). If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, "the [c]ommission is free to adopt that which is most consistent with reason and justice." Williams v. Fuqua, 199 Va. 709, 714, 101 S.E.2d 562, 567 (1958)

(citing Baltimore v. Benedict Coal Corp., 182 Va. 446, 453, 29 S.E.2d 234, 238 (1944)).  Here, the only medical evidence and opinion presented as to the level of claimant's functional impairment comes from Dr. Kavanagh, claimant's treating physician.

The commission considered claimant's return to full work duty in assessing whether there was a functional loss of use of his left lower extremity, but concluded that return to full work duty did not contradict Dr. Kavanagh's assessment of nine percent permanent partial disability. While Dr. Kavanagh's assessment of functional impairment was not accompanied by a detailed explanation, the record lacks any medical opinion disputing that rating.

II.

Employer finally asserts that the commission erred in finding that claimant proved his nine percent permanent partial disability resulted solely from the June 2003 work-related accident.  It argues that Dr. Kavanagh failed to apportion claimant's disability rating between his compensable June 2003 work-related injury and his prior 1996 left knee injury.

The record demonstrates that claimant suffered a medial meniscal tear to his left knee in 1996.  Dr. Kavanagh treated that injury conservatively with physical therapy and reported that claimant "did well" following treatment.  Moreover, claimant worked for seven years following the 1996 injury without problem until he sustained his June 2003 injury.  Following the June 2003 injury, claimant underwent left knee surgery and physical therapy in order to return to his job.  Dr. Kavanagh, who treated claimant for both the 1996 and 2003 injuries, expressed his medical opinion that claimant sustained a nine percent permanent partial disability to his left lower extremity solely as a result of his June 2003 compensable work-related injury.  As the deputy commissioner noted, "employer has not presented any contrary evidence showing that the claimant suffered a preexisting *functional loss*" and "claimant has met his burden of proving a

9% impairment as a result of the 2003 work accident." (Emphasis added). Employer has failed to provide any medical opinion to contradict this finding.

## CONCLUSION

The record before us contains credible, and uncontradicted, medical evidence to support the commission's factual finding that claimant sustained a nine percent permanent partial disability to his left lower extremity solely as a result of his June 2003 work-related injury. For the above reasons, we affirm the commission's decision.

Affirmed.
