COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:  Judges Petty, Athey and Senior Judge Frank
Argued by videoconference


AMANDA CLEMENTS

MEMORANDUM OPINION[*] BY
v.      Record No. 0109-21-3           JUDGE ROBERT P. FRANK
                                              AUGUST 3, 2021

AUGUSTA HEALTH AND
  SAFETY FIRST INSURANCE CO.


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Bradford M. Young (HammondTownsend, PLC, on briefs), for
appellant.

Matthew J. Griffin (Christopher M. Kite; Lucas & Kite, PLC, on
brief), for appellees.


Amanda Clements, claimant, appeals a decision of the Virginia Workers' Compensation

Commission (the Commission) affirming the deputy commissioner's August 17, 2020 opinion

finding that her work-related accident caused only a 25% permanent partial disability to her right

lower extremity and her pre-existing condition caused the additional 25%. On appeal, claimant

contends that the Commission erred by (1) "relying on the authorized treating physician's June

18, 2020 opinion to find that half of the permanent disability" is attributable to her pre-existing

condition, (2) "failing to award compensation for permanent partial disability . . . based on the

authorized treating physician's March 11, 2020 opinion," and, in the alternative, (3) failing to

award her compensation "based on averaging the permanent disability" ratings in the authorized

treating physician's two opinions. We affirm the Commission's decision.

_____

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

"When reviewing an appeal from the Commission, we consider the evidence in the light most favorable to the prevailing party below." Morris v. Federal Express Corp., 70 Va. App. 571, 574-75 (2019). Accordingly, we view the evidence in the light most favorable to Augusta Health and grant it all "reasonable inferences that may be drawn from" such a view of the evidence. Id. at 575 (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005)).

On December 17, 2016, claimant injured her right hip when she slipped on ice and fell in a parking lot at work. She and the appellees, Augusta Health and Safety First Insurance Co. (hereinafter collectively "Augusta Health"), thereafter signed an award agreement that encompassed the injury to her hip. The Commission entered an award order approving the agreement.

At the time of the workplace injury, claimant had a pre-existing disease, i.e., degenerative joint disease of the right hip. Her treating physician, Jack F. Otteni, MD, saw her on November 3, 2015, a year before the workplace injury. He wrote that the "discomfort is currently moderate to severe in intensity and wavers and wanes in severity and is intermittent." He further wrote:

> ASSOCIATED SIGNS AND SYMPTOMS:
> The patient also describes catching, decreased range of motion, and stiffness in the morning or after prolonged rest. The pain is aggravated by activities of daily living, strenuous activity, work, and pivoting to change direction.
> The patient has tried the following NSAIDS - Advil (Ibuprofen) and Aleve (Naproxen Sodium). . . . The patient has difficulty putting on SOCKS AND SHOES, has difficulty getting IN and OUT of CAR, and can not ambulate a significant DISTANCE without resting. The patient has also tried the following NSAIDS - Advil (Ibuprofen) and Aleve (Naproxen Sodium). . . . The patient has found temporary relief from NSAIDs.

On November 13, 2018, Dr. Otteni opined that claimant would have needed a right hip replacement in the future even if her December 17, 2016 fall and injury had not occurred. On

December 6, 2018, claimant filed a claim for benefits that included a request for permanent partial disability (hereinafter "PPD").

In March 2020, claimant filed an application seeking compensation for PPD to her right lower extremity. She included with her application her authorized treating physician's March 11, 2020 opinion that she had permanent disability of 50% in her right lower extremity due to the December 2016 accident. Augusta Health then obtained the physician's June 18, 2020 opinion that half of claimant's permanent disability was due to arthritis in her right hip that pre-existed the accident.

On March 11, 2020, in response to questions posed to him by claimant's counsel, Dr. Otteni opined that, prior to appellant's total hip replacement (occurred on December 11, 2018), the doctor assigned a 50% permanent disability rating to her right lower extremity.

On June 18, 2020, Dr. Otteni responded to Augusta Health's counsel's questions as follows:

> 1. Ms. Clements had pre-existing (pre-accident) degenerative joint disease and osteoarthritis in her right hip that caused some of the permanent or partial impairment in her right lower extremity that I referenced in the report that I completed and endorsed on March 11, 2020.
>
>  _X_ Yes        ____ No
>
> 2. That considering the underlying and pre-existing conditions in Ms. Clements' right hip, I think that the 50% impairment rating or "loss of use" of her right lower extremity, as indicated in the report dated March 11, 2020, should be apportioned between those pre-existing issues/conditions and the workplace injury.
>
>  _X_ Yes        ____ No
>
> 3. That with knowledge of and considering the pre-existing conditions in Ms. Clements' right hip as well as the injury that she sustained in her workplace accident, I think that half of the 50% rating that I indicated in the report dated March 11, 2020, is caused

by or attributable to the pre-existing issues/conditions and that half of that rating is caused by or attributable to the workplace injury.

_X_ Yes        ____ No

4. That in light of my response to question numbered 3, it is my opinion that the percentage impairment rating to Ms. Clements' right lower extremity that is caused by or attributable to her workplace injury is 25%.

_X_ Yes        ____ No

The deputy commissioner awarded permanent partial disability for 25% permanent loss of use of the right lower extremity attributable to the work accident, concluding that, under the appropriate circumstances, a disability rating must distinguish between a pre-existing condition and a work-related aggravation of the condition. The deputy commissioner rejected claimant's argument that there was no evidence of a pre-existing functional loss of use before the accident. He cited Dr. Otteni's November 3, 2015 treatment note as evidence of a functional loss of use to the right lower extremity pre-existing the work accident.

Claimant sought review of the deputy commissioner's decision. The Commission affirmed it, finding claimant had a pre-existing functional loss, with one Commissioner dissenting. Claimant filed a motion for reconsideration, which the Commission denied. This appeal follows.

ANALYSIS

On appeal, claimant raises three assignments of error, two of which are essentially the same, i.e., that the Commission erred in finding that half of the permanent disability rating of 50% of appellant's right lower extremity is attributable to her pre-existing disease. Essentially, she argues that there is no evidence that her pre-existing disease resulted in a permanent functional loss of that body part. In her third assignment of error, claimant contends that the Commission erred in failing to award compensation to her for permanent partial disability based

on averaging the permanent disability rating of 50% found in Dr. Otteni's March 11, 2020 opinion and the doctor's June 18, 2020 opinion that half (25%) of her permanent disability stemmed from a pre-existing condition.

Under well-recognized principles governing the standard of review on appeal, we must affirm the Commission's judgment awarding permanent partial disability if those findings are supported by credible evidence in the record, regardless of whether contrary evidence exists, or contrary inferences may be drawn. See Code § 65.2-706(A); United Airlines, Inc. v. Sabol, 47 Va. App. 495, 500 (2006); Stenrich Group v. Jemmott, 251 Va. 186, 192 (1996). "In determining whether credible evidence exists to support the [C]ommission's findings of fact, 'the appellate court does not retry the facts, reweigh . . . the evidence, or make its own determination of the credibility of the witnesses.'" City of Newport News v. Kahikina, 71 Va. App. 536, 545 (2020) (quoting Farmington Country Club, Inc. v. Marshall, 47 Va. App. 15, 26-27 (2005)). Moreover, the Court of Appeals views the evidence in the light most favorable to the party who prevailed before the Commission on the issue, here Augusta Health. See K & K Repairs & Constr. v. Endicott, 47 Va. App. 1, 6 (2005).

The crux of the first two assignments of error is whether sufficient evidence supports the Commission's finding that claimant suffered a pre-existing functional loss prior to her workplace accident. If not, she argues, the percentage of permanent disability cannot be apportioned between the pre-existing disease and the workplace injury.

"The [C]ommission, in determining permanent partial disability benefits, must rate claimant's percentage of incapacity based on the evidence presented to it." Sabol, 47 Va. App. at 501. Appellant correctly cites Virginia Natural Gas, Inc. v. Tennessee, 50 Va. App. 270 (2007), for the legal principle that unless claimant experienced some permanent functional loss of use of

- 5 -

her right leg before the compensable injury, the employer is not entitled to a credit for claimant's pre-existing condition. There, we explained:

> nothing in the record indicates that claimant experienced any permanent functional loss of use of his right leg prior to the compensable injury on February 4, 2002. There is no evidence, for instance, that he was ever diagnosed with a permanent impairment, given a permanent impairment rating, or placed under any permanent work restrictions before the compensable injury. To the contrary, Dr. DiStasio specifically noted that, after claimant's prior knee surgery in 1991, claimant "returned to full duty and did well until" the compensable injury. Moreover, the record establishes that the symptomatic limitations that ultimately necessitated the total knee replacement surgery did not arise until after, as Dr. DiStasio noted, the injury by accident "exacerbated" the pre-existing arthritic condition.

Virginia Natural Gas, 50 Va. App. at 281.

In Sabol, the employer argued that because the record showed that claimant demonstrated no functional loss of use of his left leg, it was error to award claimant a 9% permanent partial disability. 47 Va. App. at 501-02. There, employer further asserted that claimant's return to full work duty, the absence of any limitation of his daily work or life activities, and the failure of his pain to inhibit function of his lower extremity precluded his compensation for permanent partial disability. We rejected that argument.

In Sabol, we cited the Commission's consideration of claimant's return to work, but concluded that return to work did not contradict the treating physician's assessment of 9% permanent partial disability. We explained that when the Commission rates a claimant's percentage of incapacity, "it gives great weight to the treating physician's opinion. If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, 'the [C]ommission is free to adopt that which is most consistent with reason and justice.'" Id. (citations omitted) (quoting Williams v. Fuqua, 199 Va. 709, 714 (1958)). As noted above, however, "where no permanent pre-existing functional loss of use of the body part is shown, the

[C]ommission may not allow the employer a credit for a condition or defect that pre-existed the compensable injury." Virginia Natural Gas, 50 Va. App. at 280-81.

Similarly, it is well-settled that: "[w]hen a work-related accident aggravates a preexisting condition, an employee can recover for the degree of impairment caused by the aggravation but not for any preexisting impairment unrelated to the work-related accident." Fairfax County School Bd. v. Martin-Elbehri, 55 Va. App. 543, 545-46 (2010). "By statute, 'if an employee has a permanent disability' prior to the work-related accident, he is 'entitled to compensation *only for the degree of incapacity* which would have resulted from the later accident if the earlier disability or injury *had not existed.*'" Id. at 546 (emphasis added) (quoting Code § 65.2-505(A)).

We learn from these cases that, while not an exclusive test, factors to be considered in determining whether there is a permanent functional loss include the treating physician's opinion, whether claimant was placed under permanent work restrictions, whether claimant was ever diagnosed with a permanent impairment, whether claimant was ever given a permanent impairment rating, whether there were symptomatic limitations, or whether the pre-existing disease affected claimant's overall ability to use that body part. See Virginia Natural Gas, 50 Va. App. at 281; Sabol, 47 Va. App. at 501-02.

Here, Dr. Otteni, in his November 3, 2015 opinion, indicated that claimant's "discomfort is currently moderate to severe in intensity and wavers and wanes in severity and is intermittent." He documented claimant's decreased range of motion, stiffness in the morning or after prolonged rest. He noted that the "pain is aggravated by activities of daily living, strenuous activity, work and pivoting to change direction." Claimant had difficulty putting on socks and shoes, had difficulty getting in and out of cars, and could not walk a significant distance without resting.

The doctor opined that claimant would need right hip replacement in the future even if her workplace injury had not occurred.[1]

Claimant correctly notes that Dr. Otteni's November 2015 notes do not make any specific finding of permanent disability nor did he limit her work or physical activities. Further, there is no evidence claimant was unable to work before her compensable injury. However, claimant's pre-existing hip condition had a significant effect on her ability to function. She had a decreased range of motion, and she was stiff in the morning and after periods of rest. The pain was aggravated by activities of daily living, strenuous activity, and pivoting to change direction. Even before her compensable injury, claimant had difficulty in putting on socks and shoes and in getting in and out of cars. Further, she could not walk a significant distance without resting. Thus, her enjoyment of daily living was compromised by her pre-existing condition. Her movement was limited. Her daily routine was materially affected by her pre-existing disease. Her bending (putting on shoes and socks and getting in and out of cars) was a limitation caused by that disease.

Claimant's degenerative disease of the right hip caused symptomatic limitations and affected her overall ability to functionally use her hip. That pre-existing condition compromised her ability to functionally work without resting, bending, entering and exiting vehicles, and decreased her range of motion.

The record supports the Commission's factual finding of a pre-existing functional impairment, and we are bound by that finding on appeal. See Conner v. City of Danville, 70 Va. App. 192, 200-01 (2019) (noting that "we are bound by the Commission's factual findings and reasonable inferences drawn from the evidence if they are supported by credible evidence in

---

[1] The Commission relied on Dr. Otteni's November 3, 2015 opinion.

the record"). While Dr. Otteni's March 11, 2020 response to claimant's questions (50% permanent loss due to the compensable injury) was perhaps facially inconsistent with his June 18, 2020 response (half of the 50% rating was attributable to the pre-existing condition), it was the Commission's duty to resolve conflicting evidence. If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, "the [C]omission is free to adopt that which is most consistent with reason and justice." Sabol, 47 Va. App. at 501-02 (quoting Williams, 199 Va. at 714). The Commission accepted Dr. Otteni's June 18, 2020 opinion and properly apportioned the 50% rating: 25% to the pre-existing condition and 25% to the workplace injury. Dr. Otteni's June 18, 2020 opinion to Augusta Health's questions clarified, and expanded upon, rather than contradicted, his earlier opinion. Accordingly, we find no error in the Commission's ruling.

Appellant next contends that the Commission abused its discretion by failing to award her compensation based on the average of Dr. Otteni's two opinions. The Commission may weigh or average conflicting impairment ratings. See Morales v. WMATA, 20 WC UNP VA00001051454 (2020). This argument, however, is premised on Dr. Otteni's giving two conflicting opinions. First, on March 11, 2020, he assigned a 50% disability rating for the impairment to claimant's lower right extremity. Then, on June 18, 2020, he did not change the original 50% rating but apportioned the 50% rating between the pre-existing condition and the compensable injury. Thus, there was no conflict on his ratings and no need to average.

Claimant argues that it "is not possible to reconcile the settled factual findings in the August 22, 2019 opinion with the Review Opinion's conclusion that at the time of the December 2016 accident, [claimant] had permanent and functional loss of use in her right lower extremity due to arthritis in her hip." We disagree.

- 9 -

Although the deputy commissioner, in the earlier opinion, concluded that claimant was able to perform her employment duties and "live an active lifestyle," the opinion does not state that claimant did not have a permanent and functional loss of use in her right lower extremity prior to the workplace accident. The 2019 hearing and deputy commissioner's opinion related to a claim seeking medical coverage for the hip replacement and temporary total disability benefits after the surgery. The issue then before the Commission was distinct from the issue presently before the Court. The Commission's finding, in the review opinion, that claimant had pre-existing functional loss before the workplace accident does not conflict with the earlier deputy commissioner's opinion. Specifically, the deputy commissioner's conclusion that claimant lived an "active lifestyle" and was able to perform her job functions, does not discount the possibility that she also suffered pre-existing functional loss. See Sabol, 47 Va. App. at 502-03. Here, the record proves that although claimant was "active," her range of motion and the duration of her activity was limited and restricted to brief periods before the need for rest. Dr. Otteni's opinion, accepted by the Commission, established that claimant, though able to ambulate and perform her job, also exhibited functional loss. In his June 18, 2020 opinion, Dr. Otteni emphasized that claimant's pre-existing degenerative joint disease and osteoarthritis caused some of her impairment. Dr. Otteni's conclusions and the Commission's acceptance of his opinion does not conflict with the earlier deputy commissioner's factual findings. Accordingly, we find no merit to claimant's argument.

Because credible evidence showed that claimant suffered a permanent pre-existing functional loss of use of her lower right extremity, Augusta Health was entitled to a credit for claimant's pre-existing arthritic condition. See id. We hold, therefore, that the Commission did not err in allowing Augusta Health such a credit and in awarding claimant permanent partial

disability benefits based on the entire 25% impairment rating assigned by claimant's treating doctor attributable to the workplace injury.

For these reasons, we affirm the Commission's decision.

Affirmed.