UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Beales, Huff and Malveaux

RUSSELL RANKIN

v.      Record No. 1058-21-4

ASPLUNDH TREE EXPERT CO. AND
 LIBERTY INSURANCE CORPORATION

MEMORANDUM OPINION*
PER CURIAM
APRIL 19, 2022

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(Gregory J. Park; Park & Park, P.C., on brief), for appellant.
Appellant submitting on brief.

(Dennis Boyd Cook; Midkiff, Muncie & Ross, P.C., on brief), for
appellees.  Appellees submitting on brief.

Russell Rankin ("claimant") appeals a final order of the Workers' Compensation

Commission denying his claim seeking medical benefits for his left foot condition.  On appeal,

claimant argues the Commission erred in finding "that appellees met their burden of proving that

there was no causal connection between appellant's work-related injuries and the left foot

condition for which he sought surgery."  Because credible evidence supports the Commission's

decision, this Court affirms.

I.  BACKGROUND

"On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015) (quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (*en banc*)).

Claimant sustained a compensable injury by accident on May 21, 2014, when he fell from a tree while working for Asplundh Tree Expert Co. ("employer"). The Commission entered an award order on September 22, 2014, based on the parties' agreement forms, granting claimant temporary total disability benefits beginning May 27, 2014, and lifetime medical benefits for his "fractured left ankle, fractured right ankle, L3 fracture, sternal fracture, left knee, and ribs." The parties later stipulated that due to mutual mistake, some of the body parts included in the original award were incorrect. The Commission vacated the prior award accordingly and included the following injuries under claimant's new lifetime medical award: "Fractured left ankle, L3 fracture, sternal fracture, right knee fracture, and ribs."

Claimant later filed a claim for benefits seeking "authorization for left foot surgery with Dr. Joanna Wyman." Claimant began treating with Dr. Wyman in January 2015 for an ingrown toenail on his left great toe. At that time, Dr. Wyman noted that claimant had a work accident in May of 2014 resulting in "multiple fractures and complications and infections from which he is still recovering." Claimant had already undergone multiple surgeries due to his work accident before his initial visit with Dr. Wyman. At the initial visit with Dr. Wyman, claimant exhibited full strength and "pain-free range of motion of all other pedal joints. His sensation [was] intact to light touch to all toes distally, which is equal." Dr. Wyman performed multiple toenail removal procedures on the left great toe thereafter.

Throughout 2015, Dr. Wyman noted claimant exhibited good sensation in all toes as well as good motion and intact muscle strength in the left foot. In September 2015, claimant's orthopedic specialist opined that claimant had reached maximum medical improvement regarding his left ankle fracture. Thereafter, claimant was evaluated for permanent partial

- 2 -

impairment ratings pertaining to his ratable body parts injured in the work accident. Relevant to the pending matter, claimant, at the time exhibited "good muscle strength and tone" and satisfactory circulation and sensation in both lower extremities. Claimant was assigned a 15% permanent partial impairment rating for the left ankle and a 12% permanent partial impairment rating for the left leg.[1]

In December 2016, claimant reported increasing pain in the left great toe with stiffness, discoloration, and progressive deformity. Claimant exhibited clawing of the second through fifth toes and a hallux valgus deformity. Claimant was able to bear weight on the left foot with "relatively normal gait here in normal shoes, no assistive devices." By July 2017, Dr. Wyman noted she had evaluated claimant "for a painful left foot deformity that developed after his traumatic injuries" and that claimant "ha[d] a progressive bunion deformity with arthritis, and rigid hammertoes." Dr. Wyman opined that, while claimant was not having debilitating pain at the time, his condition could worsen with time and require surgical intervention.

Claimant returned to Dr. Wyman in April 2020, at which time Dr. Wyman acknowledged she had not seen claimant in over three years. Dr. Wyman opined that claimant's "initial injury, as well as the post injury complications caused neuromuscular damage to the [left] foot, tendon imbalance, and muscle tone loss, resulting in contracted claw toes and a large hallux abducto valgus deformity." She also noted claimant had multiple surgeries to address his compensable lumbar spine injury since the work accident and could not "rule out that injury to his lumbar spine may also contribute to some of the muscle contracture and deformities to the left foot." Accordingly, Dr. Wyman stated that claimant's hallux rigidus, bunion deformity, hammertoes, and contracted metatarsal in the left foot were a direct result of claimant's work injury and

---

[1] Claimant was also assigned a 20% permanent partial impairment rating for the right knee, and a 12% permanent partial impairment rating for the right leg.

recommended surgery to "correct these painful deformities that limit his ability to walk, stand, and wear normal shoe gear."

Employer challenged Dr. Wyman's opinions on causation by relying on findings from an independent medical evaluation (IME) performed by Dr. Steven Neufeld and a records review performed by Dr. Laurence Rubin. Dr. Neufeld, an orthopedic specialist, reviewed claimant's extensive history of medical treatment and evaluated claimant on August 21, 2020. Dr. Neufeld opined that claimant's left foot diagnoses of "hallux valgus, hallus rigidus, [and] hammertoes" were not related to the work injury. Dr. Neufeld reasoned there was no suggestion in the medical records that claimant's left foot was injured due to the work injury and that claimant's left foot conditions were "common problems that many people develop as they get older . . . [and] if the [work injury] caused them--he would have presented earlier with these problems." Dr. Neufeld further opined that claimant did not require any medical treatment for the left foot as related to the compensable work injury.

Dr. Rubin, a podiatrist, conducted a records review on March 21, 2021. Dr. Rubin agreed with Dr. Wyman that claimant suffered from "hallux abducto valgus, hallux rigidus, and claw toes" and that he needed surgery to address these issues. But Dr. Rubin disagreed that these diagnoses were related to claimant's compensable work injury. Dr. Rubin noted the potential for these diagnoses to be related to claimant's work injury would be based on claimant "having a neuromuscular or tendon imbalance." Nonetheless, Dr. Rubin's review of the records, in his view, demonstrated "no objective evidence of this in the chart. There are multiple occasions where the objective findings demonstrate 5/5 normal muscle strength." Dr. Rubin also pointed to the significant amount of time between claimant's work injury and the presentation of claimant's current symptoms, stating that the "latency was longer than expected if these deformities were a direct result from a neurological or strength imbalance." Lastly, Dr. Rubin reasoned claimant

- 4 -

had similar developing problems in his right foot, which were not caused by the work accident, and that claimant's diagnoses in the left foot were common findings in the general population.

At the evidentiary hearing, claimant confirmed he underwent nine surgeries for the left leg following the work accident to treat "non-union, infections and . . . blood clots." Claimant also testified that he underwent extensive rehabilitation and physical therapy for his left ankle and was non-weight-bearing with regard to his left ankle for approximately one year. Claimant denied having any issues with the great toe on his left foot prior to beginning treatment with Dr. Wyman in 2015. Dr. Wyman advised claimant that his left foot condition would continue to worsen and eventually require surgery. Claimant denied having any similar condition involving his right foot.

Upon review of the medical evidence in the record as well as claimant's testimony, the deputy commissioner found employer sustained its burden to show that a causal relationship was lacking between claimant's left foot condition and his compensable work accident. The deputy commissioner reasoned that Dr. Wyman's opinions were not conclusive, despite Dr. Wyman's status as claimant's treating physician. Specifically, the deputy commissioner emphasized that Dr. Wyman's records failed "to reveal any evidence of neuromuscular compromise, tendon imbalance, or loss of muscle tone" or that claimant "had developed, or was developing, a bunion or hammertoe deformity of his left foot related to his work injury." The deputy commissioner instead agreed with Drs. Neufeld and Rubin that there was insufficient evidence of any causative link between claimant's work accident and the left foot condition for which claimant sought surgical intervention.

Claimant timely submitted his request for review of the deputy commissioner's opinion to the full Commission. The Commission unanimously affirmed the deputy commissioner's rulings. The Commission agreed with the deputy commissioner's determination that, while

Dr. Wyman was claimant's treating physician, her opinions on causation were "shaded by doubt" because they were "based on the premise that the claimant suffered neuromuscular damage, tendon imbalance, and muscle tone loss as a result of his left lower extremity injury. However, this premise is not corroborated by the other evidence in the record." The Commission therefore afforded greater weight to the opinions of Drs. Neufeld and Rubin because "their opinions [were] well-reasoned and consistent with the medical evidence as a whole."

This appeal followed.

## II. STANDARD OF REVIEW

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Employer's Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind could conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis*, 45 Va. App. at 83-84 (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). In determining whether credible evidence exists to support the Commission's findings of fact, "the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Pruden v. Plasser Am. Corp.*, 45 Va. App. 566, 574-75 (2005) (quoting *Wagner Enter., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991)).

- 6 -

## III.  ANALYSIS

Claimant argues the Commission erred in weighing the opinions of Drs. Neufeld and Rubin more heavily than those of Dr. Wyman.  He believes the "medical evidence provided by Dr. Wyman showed a clear connection between claimant's work injury and his left foot deformity, while the evidence provided by Drs. Neufeld and Rubin was insufficient to prove lack of causation."  But because the Commission's contrary conclusion is supported by credible evidence in the record, this Court disagrees.

Causation is a finding of fact and is typically proved by medical evidence.  *Lee Cnty Sch. Bd. v. Miller*, 38 Va. App. 253, 260 (2002); *Clinch Valley Med. Ctr. v. Hayes*, 34 Va. App. 183, 192 (2000).  "The opinion of the treating physician is entitled to great weight, although the [C]ommission is not required to accept it[.]"  *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018) (last alteration in original) (quoting *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011)).  "[S]uch an opinion is not conclusive, especially when the opinion is not accompanied by any reasoning or explanation."  *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 623 (2002).  "If there is any doubt in the treating physician's opinion, or if there is contrary expert medical opinion, 'the [C]ommission is free to adopt that which is most consistent with reason and justice.'"  *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501-02 (2006) (quoting *Williams v. Fuqua*, 199 Va. 709, 714 (1958)).  Thus, where medical opinions conflict, "the [C]ommission [is] free to decide which evidence [is] more credible and should be weighed more heavily."  *Thompson*, 38 Va. App. at 624.

Here, Dr. Wyman opined that claimant's left foot condition, which required surgery, arose from claimant's compensable work accident.  According to Dr. Wyman, claimant's need for left foot surgery arose from conditions that were allegedly caused by the work accident, including claimant's "neuromuscular damage to the foot," "tendon imbalance," "muscle tone

loss," and lumbar spine injury. Over the course of Dr. Wyman's treatment of claimant since January 2015, however, Dr. Wyman made no prior mention of these causative conditions as a basis for claimant's left foot deformities. Rather, Dr. Wyman and claimant's orthopedic specialists consistently noted that claimant had "good sensation in all toes," his "muscle strength [was] intact and [there was] no pain with pedal joint range of motion."

Dr. Wyman did note in 2017 that claimant was experiencing "a painful left foot deformity that developed after his traumatic injuries" and that he had "progressive bunion deformity with arthritis, and rigid contracted hammertoes." However, as Dr. Rubin noted, there is no "objective evidence" in the record that these deformities arose from conditions caused by the work accident. Dr. Neufeld did not observe any tendon abnormalities in his examination of claimant's left lower extremity and remarked claimant's left foot problems would have presented earlier if they had been caused by the 2014 injury. Dr. Neufeld also opined along with Dr. Rubin that claimant's diagnoses in the left foot were common findings in the general population. Dr. Neufeld's findings align with claimant's documented medical history and Dr. Rubin's opinion that there was no evidence of neuromuscular damage to the foot, tendon imbalance, and muscle tone loss, or any other diagnosis related to the work accident that could have caused claimant's left foot deformities.

In this way, Drs. Rubin and Neufeld provided credible evidence in the record to support the Commission's finding that employer met its burden to show the present injuries were not causally related to claimant's compensable workplace accident. Given the applicable standard of review, this Court will not disturb the Commission's finding on that front.

## IV.  CONCLUSION

For the foregoing reasons, this Court affirms the unanimous judgment of the Commission.

*Affirmed.*