COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Friedman and Callins
Argued at Salem, Virginia


GOODYEAR TIRE & RUBBER COMPANY AND
  LIBERTY INSURANCE CORPORATION
                                                      MEMORANDUM OPINION* BY
v.        Record No. 1167-21-3                      JUDGE WESLEY G. RUSSELL, JR.
                                                              MAY 3, 2022
JEFFREY FOLEY


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Matthew J. Griffin (Lucas & Kite, PLC, on brief), for appellants.

          Bradford M. Young (HammondTownsend, PLC, on brief), for
          appellee.


        Goodyear Tire & Rubber Company and its insurer (collectively "employer") appeal a

decision of the Workers' Compensation Commission granting Jeffrey Foley an award for "medical

benefits . . . causally related to the claimant's May 8, 2020 left knee sprain and left knee injury,

including the requested left knee total knee replacement surgery."  Finding no error, we affirm the

decision of the Commission.

                                        BACKGROUND

        "On appeal from a decision of the Workers' Compensation Commission, the evidence

and all reasonable inferences that may be drawn from that evidence are viewed in the light most

favorable to the party prevailing below." *Anderson v. Anderson*, 65 Va. App. 354, 361 (2015)

(quoting *Artis v. Ottenberg's Bakers, Inc.*, 45 Va. App. 72, 83 (2005) (*en banc*)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On May 8, 2020, claimant sustained an injury to his left knee while he was working as an electrician in the "maintenance group" for employer. At the time of the accident, claimant was working in an area covered in "grease, water, and hydraulic fluid." As claimant stepped across the machine where he was working, his left foot slipped, turned sideways, and jammed. Claimant reported his injury to employer that day and continued working his regular job duties. During his consultation with a nurse that day, claimant exhibited full range of motion with mild pain in his left knee.

Claimant returned to the nurse the next day, reporting that he could walk, ride a bike, and bend his left knee with "no issues." Claimant did state he had slight pain in his left knee "when climbing [a] ladder but nothing he would like followed up on at this time." The nurse advised claimant that he could continue working his regular job duties.

On or about June 21, 2020, claimant experienced additional left knee issues when he was "in an awkward stance performing some maintenance" on another machine for employer. Claimant reported this injury to employer when he returned to his next scheduled shift. No diagnostic studies or imaging were performed on claimant's left knee at that time.

A few days later, claimant experienced additional issues with his left knee when he was walking to his mailbox at home. At that time, claimant was "just walking through the yard. Didn't step in a hole. Didn't step on a stick. I swear I felt it tear and I heard a pop and then that started a really bad day." Claimant advised the nurse that day that his left knee had "not seemed to get any better over the last few weeks and then today it just gave out on him and felt like something 'detached.'" Claimant also went to the emergency room that day, reporting that he had "felt a pop on the medial left knee and immediate intense pain." Claimant advised the doctor in the emergency room that he had injured his left knee "several months" earlier but had been

"able to ambulate and climb stairs with a brace." X-rays showed no acute bony abnormality. Claimant did not return to work the following day because "the pain was too great."

Claimant began treatment with his treating physician, Dr. Norris, on or about July 9, 2020. Claimant informed Dr. Norris that he had sustained a "twisting injury" to his left knee on May 8, 2020, and that his left knee was "initially swollen and painful but this has started to improve." Claimant also reported issues of stability, as well as "several episodes of twisting. He report[ed] a 'pop' with the last twisting episode." Dr. Norris administered a cortisone injection, placed claimant under light-duty restrictions, and recommended an MRI.

The MRI demonstrated a "meniscal root tear on the medial side . . . with moderate to severe osteoarthritis bicompartmental." Upon review of the MRI results, Dr. Norris recommended conservative treatment "for a couple more years then he would be an excellent candidate for knee replacement surgery." Notably, Dr. Norris also indicated that claimant clearly remembered "a 'pop' when this first happened."

In August 2020, Dr. Norris completed a medical questionnaire prepared by employer. There, Dr. Norris stated that claimant's May 8, 2020 work accident was not the "primary cause" of claimant's left knee osteoarthritis. When asked to provide a specific diagnosis related to claimant's May 8, 2020 work accident, Dr. Norris stated that claimant "suffered a meniscus root tear which significantly increased the stress on the [medial] compartment and aggravated the knee arthritis." Dr. Norris further explained that claimant's need for a total knee replacement was related to the May 8, 2020 work accident because the accident was an "[a]ggravation of [claimant's] pre-existing condition that was previously not causing symptoms or functional impairment."

In November 2020, claimant saw Dr. Torre for an independent medical evaluation (IME) arranged by employer. According to claimant, the IME lasted fifteen to twenty minutes.

Dr. Torre diagnosed claimant's injury as a "sprain of the left knee superimposed on underlying osteoarthritis" and concluded that "[t]here are no current objective findings of an acute sprain, as the sprain component ha[d] resolved." Dr. Torre also stated that claimant's ongoing symptoms were consistent with the "objective evidence of osteoarthritis of the knee, not caused by the accident." He further opined that "[w]hile the sprain caused symptoms in the arthritic medial compartment, there is no evidence that the sprain caused any material, structural or physiologic change in the knee arthritis or its natural long-term history." As for the medial meniscus tear demonstrated by claimant's MRI, Dr. Torre stated that such a tear is "an expected component of the arthritic features of a knee." Dr. Torre recommended a treatment plan consisting of "conversative management of the underlying arthritis . . . . No[] further treatment for the knee sprain is necessary." Dr. Torre also opined that a "[t]otal knee replacement is not appropriate nor medically necessary at this time as treatment for a knee sprain, irrespective of the underlying arthritis."

In January 2021, after no significant progress in claimant's condition, Dr. Norris recommended a "total knee arthroplasty to restore mechanical alignment and to alleviate pain and restore function to his knee." Dr. Norris also responded to a medical questionnaire prepared by claimant's counsel. In the questionnaire, Dr. Norris opined that claimant's "meniscal root tear [was] likely due to [claimant's May 8, 2020] injury" and that claimant's "arthritis [was] exacerbated by [claimant's May 8, 2020] injury." Dr. Norris also provided a treatment plan consisting of a "total knee replacement, left knee" followed by physical therapy.

Dr. Norris provided another written opinion in March 2021, in which he stated that "[t]he arthritis note[d] on MRI would have likely pre-dated the injury and may have been aggravated by the work injury but not caused by the work injury." Dr. Norris also suggested that claimant's "twisting injury at work is an injury mechanism that can lead to meniscal tears of the knee and

would be consistent with his described injury course and symptoms." With regard to the incident involving claimant walking to his home mailbox, Dr. Norris did "not have an opinion as to the extent that this other injury may have compounded the reported work injury."

At the evidentiary hearing on April 13, 2021, employer stipulated that claimant suffered a compensable left knee sprain on May 8, 2020. Employer challenged the extent of claimant's disability as related to the work accident and argued that "the request for specific medical treatment that has been claimed [was] not causally related to the work injury itself." Employer also defended the claim on grounds that claimant's May 8, 2020 work injury had resolved, "consistent with the opinion expressed by Dr. Torre."

Claimant testified at the hearing that his left knee condition never improved after May 8, 2020. He acknowledged that he had returned to work, but he stated that he was "uncomfortable" executing his duties. Medical records and the questionnaire responses of both Dr. Norris and Dr. Torre were entered into evidence.

After considering the evidence, the deputy commissioner issued a decision finding that claimant did not prove that the requested medical treatment was causally related to the work accident. The deputy commissioner reasoned that, although claimant had suffered a knee sprain as a result of the May 8, 2020 work accident, "it was not until the claimant was walking in his yard on June 28, 2020 that he felt a pop and had significant pain in his left knee." The deputy commissioner afforded the opinions of Dr. Torre greater weight than those of the treating physician, Dr. Norris, explaining that Dr. Norris' opinions were "equivocal and based on an inaccurate history." Based on these findings, the deputy commissioner limited claimant's award

of medical benefits to the period from the May 8, 2020 work accident to November 19, 2020, the date of Dr. Torre's IME report.[1]

Claimant requested full Commission review of the deputy commissioner's opinion; he asserted that the deputy commissioner erred in finding that the impairment he suffered from his May 8, 2020 work accident "did not extend beyond November 19, 2020" and that the work accident "played no role in [claimant's] need for left knee replacement surgery." The Commission reversed the deputy commissioner's decision; disagreeing with the deputy commissioner, the Commission held that claimant had met his burden of proving entitlement to the requested medical and disability benefits.

In finding in favor of claimant, the Commission emphasized that, irrespective of the language in his March 2021 statement, "Dr. Norris repeatedly expressed that the compensable accident aggravated or exacerbated the claimant's pre-existing left knee osteoarthritis." The Commission also noted that Dr. Norris "diagnosed the claimant with a meniscal root tear related to the accident" and consistently "opined that the treatment . . . was causally related, at least in part, to the accident." The Commission also found that there was no evidence of Dr. Norris receiving an inaccurate history of claimant's disability and that any ambiguity in his opinions was not "significant enough to undermine Dr. Norris's otherwise clear opinion that the claimant aggravated his osteoarthritis in the work accident."

---

[1] We provide the history of the case before the deputy commissioner only to place the Commission's ruling in context. On brief, employer invokes facts found by the deputy commissioner to support its arguments. Those findings, however, are not before us because "the statutory scheme makes clear that the Commission reviewing a decision of a deputy commissioner sits as fact finder and that the facts it finds are binding on this Court on appellate review." *King William Cnty. v. Jones*, 65 Va. App. 536, 545 (2015), *aff'd on reh'g en banc*, 66 Va. App. 531 (2016). Accordingly, in resolving the appeal, we only consider the facts as found by the full Commission.

The Commission discounted the opinion of Dr. Torre. The Commission explained that Dr. Torre had seen claimant only once while Dr. Norris had "evaluated him on multiple occasions." The Commission found Dr. Torre "unconvincing," highlighting that, although "it is undisputed that the claimant's knee osteoarthritis was not caused by the accident, the evidence established that the condition was largely asymptomatic prior to the accident . . . ." The Commission further noted that Dr. Torre's opinion was tainted by a misunderstanding of workers' compensation law, whereby Dr. Torre erroneously considered immaterial "whether the work accident caused some degree of traumatic extension or any alteration of the degenerative medial meniscus."

Based on the record as a whole, the Commission found that claimant's work accident resulted in an aggravation of his pre-existing osteoarthritis and that claimant met his burden of proving that the requested medical treatment, including a left total knee replacement, was reasonable, necessary, and causally related to the work accident.[2] The Commission specifically concluded that "the evidence established the claimant's pain began with the May 8, 2020 accident, persisted, and worsened[,]" and based on that finding, the Commission reversed the decision of the deputy commissioner and entered a corresponding award. This appeal followed.

ANALYSIS

The fourteen assignments of error presented by employer can be consolidated into one issue: whether credible evidence supports the Commission's factual finding on the issue of causation. Employer argues that the Commission erred in finding that claimant met his burden of proving that the requested medical treatment and alleged disability were causally related to claimant's May 8, 2020 work accident. In making this argument, employer further contends that

---

[2] Commissioner Rapaport dissented, emphasizing "deficiencies for causation" in Dr. Norris' statements and concluding that Dr. Norris' opinions were "equivocal at best."

- 7 -

the Commission erred in finding that claimant's condition was not the result of a new injury that occurred after May 8, 2020 and that the Commission erred by affording greater weight to the opinions of claimant's treating physician than those of the IME physician.

## I. Standard of Review

Decisions of the Commission "shall be conclusive and binding as to all questions of fact." Code § 65.2-706(A). "Consequently, on appeal, 'we do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.'" *Jeffreys v. Uninsured Emp.'s Fund*, 297 Va. 82, 87 (2019) (quoting *Caskey v. Dan River Mills, Inc.*, 225 Va. 405, 411 (1983)). Instead, "we are bound by the [C]ommission's findings of fact as long as 'there was credible evidence presented such that a reasonable mind *could* conclude that the fact in issue was proved,' even if there is evidence in the record that would support a contrary finding." *Artis*, 45 Va. App. at 83-84 (quoting *Westmoreland Coal Co. v. Campbell*, 7 Va. App. 217, 222 (1988)). "The scope of a judicial review of the fact finding function of [the] [W]orkers' [C]ompensation [C]ommission . . . is 'severely limited[.]'" *Roske v. Culbertson Co.*, 62 Va. App. 512, 517 (2013) (quoting *Southside Va. Training Ctr. v. Ellis*, 33 Va. App. 824, 828 (2000)). Conversely, "the [C]ommission's legal determinations are not binding on appeal and will be reviewed *de novo*." *Id.* (quoting *Wainwright v. Newport News Shipbuilding & Dry Dock Co.*, 50 Va. App. 421, 430 (2007)).

## II. Causation

"On appeal, this Court views the evidence in the light most favorable to the prevailing party below." *Hess v. Virginia State Police*, 68 Va. App. 190, 194 (2017) (quoting *Advance Auto & Indem. Ins. Co. v. Craft*, 63 Va. App. 502, 508 (2014)). Accordingly, although claimant bore the burden of proving to the Commission, by a preponderance of the evidence, "a causal connection between the work-related incident" and the injury, *Hoffman v. Carter*, 50 Va. App.

199, 214 (2007), "at this juncture, as the appellant in this case, the employer bears the 'burden of showing that reversible error was committed' by the Commission[,]" *Paramont Coal Co. Va., LLC v. McCoy*, 69 Va. App. 343, 349 (2018) (quoting *Burke v. Catawba Hosp.*, 59 Va. App. 828, 838 (2012)).

The Commission's determination of causation is a finding of fact. *Lee Cnty. Sch. Bd. v. Miller*, 38 Va. App. 253, 260 (2002). "[F]actual findings of the [C]ommission will not be disturbed if based on credible evidence." *Hess*, 68 Va. App. at 194 (quoting *Anthony v. Fairfax Cnty. Dep't of Fam. Servs.*, 36 Va. App. 98, 103 (2001)). In determining whether credible evidence exists, this Court "does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." *Pruden v. Plasser Am. Corp.*, 45 Va. App. 566, 574-75 (2005) (quoting *Wagner Enter., Inc. v. Brooks*, 12 Va. App. 890, 894 (1991)). "[U]nlike the Commission, [we are] not charged with determining anew whether the . . . evidence of causation should be accorded sufficient weight to constitute a preponderance of the evidence on that issue." *Bass v. City of Richmond Police Dep't*, 258 Va. 103, 114-15 (1999).

It is undisputed that claimant suffered a compensable left knee sprain on May 8, 2020. It also is undisputed that claimant suffered from osteoarthritis in his left knee, a condition that pre-dated claimant's May 8, 2020 work accident. Thus, we are asked to determine whether credible evidence exists to support the Commission's causation finding with respect to claimant's ongoing symptoms and need for a total left knee replacement.

"Causation is usually proven by medical evidence." *Clinch Valley Med. Ctr. v. Hayes*, 34 Va. App. 183, 192 (2000). "The opinion of the treating physician is entitled to great weight, although the [C]ommission is not required to accept it[.]" *Vital Link, Inc. v. Hope*, 69 Va. App. 43, 64 (2018) (last alteration in original) (quoting *United Airlines, Inc. v. Hayes*, 58 Va. App. 220, 238 (2011)). "If there is any doubt in the treating physician's opinion, or if there is contrary

expert medical opinion, 'the [C]ommission is free to adopt that which is most consistent with reason and justice.'" *United Airlines, Inc. v. Sabol*, 47 Va. App. 495, 501-02 (2006) (quoting *Williams v. Fuqua*, 199 Va. 709, 714 (1958)). Accordingly, in cases where medical opinions conflict, "the [C]ommission [is] free to decide which evidence [is] more credible and should be weighed more heavily." *Thompson v. Brenco, Inc.*, 38 Va. App. 617, 624 (2002).

Employer argues that the opinions of Dr. Norris should not be entitled to the weight typically afforded to treating physicians because Dr. Norris' opinions were "equivocal at best," and "cannot be twisted into a clear opinion regarding causation." We disagree with employer. It is true that, at times, Dr. Norris gave opinions that employer reasonably characterizes as equivocal. For example, Dr. Norris stated in March 2021 that claimant's arthritis "may have" been exacerbated by the work injury and that the meniscal root tear was "likely" due to the work injury. Dr. Norris also explained that the mechanism of claimant's injury is one that "can lead" to meniscal tears.

As the Commission noted, however, these were not Dr. Norris' only statements regarding causation. In August 2020 and January 2021, Dr. Norris opined, to a reasonable degree of medical probability, that claimant's work accident aggravated claimant's pre-existing osteoarthritis, that claimant suffered a meniscal root tear stemming from the work accident, and that claimant required surgery as a result of the work accident. The Commission credited these opinions in forming its factual findings related to causation.

Furthermore, although claimant had osteoarthritis in his left knee prior to the accident, there is no evidence that, immediately before the accident, he had any pain or dysfunction in his left knee. There is also no evidence that claimant's condition improved following May 8, 2020. Indeed, Dr. Norris explained that claimant's need for a total knee replacement was related to the May 8, 2020 work accident because the accident was an "aggravation of [claimant's]

pre-existing condition that was previously not causing symptoms or functional impairment." In reaching its conclusion, the Commission credited Dr. Norris' opinion in this regard.[3]

Considering the totality of the record, the Commission did not err in finding Dr. Norris' opinions credible.[4] Because we do not reweigh findings of credibility, those opinions provided a sufficient evidentiary basis for the Commission's decision.

_____

[3] As noted above, the fact that Dr. Torre offered contradictory opinions is of no moment. The existence of such opinions "presented the [Commission] with the classic 'battle of the experts.' It was therefore the [Commission]'s task to resolve the conflicts in the expert testimony and to decide which expert or experts were worthy of belief." *Atkins v. Commonwealth*, 272 Va. 144, 154 (2006). The Commission explained at length the reasons it "gave more weight to [Dr. Norris'] opinion[s], and nothing in the record shows that the [Commission]'s decision was plainly wrong." *Hoebelheinrich v. Hoebelheinrich*, 43 Va. App. 543, 553 (2004). Accordingly, we are bound by the Commission's credibility determination favoring the opinions of Dr. Norris over those offered by Dr. Torre. *Thompson*, 38 Va. App. at 624.

[4] Employer also contends that, as a matter of law, the Commission was required to reject Dr. Norris' opinions because they were based on an inaccurate history. The claim is tied to statements in various medical records. Specifically, when claimant first began treating with Dr. Norris in early July 2020, claimant informed Dr. Norris that he initially had sustained a "twisting injury" to his left knee on May 8, 2020. Claimant also reported "several episodes of twisting. He reports a 'pop' with the last twisting episode." Dr. Norris' note from that initial visit makes no reference to a "pop" that occurred on May 8, 2020. The "pop" occurred, rather, during the "last twisting episode." Later that month, Dr. Norris noted that claimant suffered

> a twisting injury at work to the left knee 5/8/2020. *Patient reports some giving way with the knee*. He does wear a knee brace which helps. He also complained of medial sided knee pain. The patient clearly remembers a "pop" when *this* first happened.

(Emphasis added).

As it does here, employer argued before the Commission that this represents an inaccurate history, contending that Dr. Norris' note must be read as indicating that the "pop" was heard on May 8, 2020 when the undisputed evidence is that no "pop" was heard by claimant until June 28, 2020. In rejecting the argument, the Commission noted that it is unclear whether the language "when this first happened" refers to the first episode of claimant's knee "giving way," or to the May 8, 2020 work accident. Given this ambiguity and the context from claimant's history with Dr. Norris, the record supports the Commission's finding that Dr. Norris' conclusions regarding causation were not based on an incorrect premise that claimant felt a "pop" on May 8, 2020.

- 11 -

## CONCLUSION

For the foregoing reasons, we affirm the decision of the Commission.

*Affirmed.*